

# In the
# Missouri Court of Appeals
# Western District

JOHNSON CONTROLS, INC.,

        Appellant,

v.

DAVID TRIMMER,

        Respondent.

WD77948

OPINION FILED:

April 21, 2015

## LABOR AND INDUSTRIAL RELATIONS COMMISSION

**Before Division One: James Edward Welsh, P.J.,
Thomas H. Newton, and Karen King Mitchell, JJ.**

Johnson Controls, Inc., appeals the judgment of the Labor and Industrial Relations Commission granting David Trimmer's claim for workers' compensation benefits. Because we find that this claim was barred by the doctrine of *res judicata*, we reverse the judgment.

### Background

At the time of Trimmer's claimed injury in 2003, he had worked for Johnson Controls ("Employer") for almost thirty years. The vast majority of his job responsibilities for the past twenty-five years involved stacking batteries on and off the production line. The task required Trimmer to physically pick up the batteries and either lift or slide them onto the line or take them off of the line and place them on skids. The batteries weighed up to eighty-five pounds, and the

line on which Trimmer worked typically processed around 4,000 batteries per day. Employees were required to process a minimum of 850 batteries every two hours.

On September 9, 2003, Trimmer filled out an injury report for the Employer. It stated that Trimmer had hurt his shoulder while "stacking off" and that the "object, force, action or substance causing the injury/illness" was "batteries." Trimmer reported to a supervisor that day that his shoulder was hurting and that while he was stacking off, he "heard a popping." The supervisor documented this in an investigative report and noted that Trimmer declined her offer to go the "Med Clinic," indicating that he would wait to see if it felt better.

Trimmer's shoulder complaints worsened, and Employer eventually sent him to Dr. David Fretz at Occupational Health Services ("OHS") for evaluation and treatment. Dr. Fretz's office note of October 27, 2003, states that Trimmer reported that his shoulder pain came on gradually, that there was no episode at work that clearly caused any injury, and that he does work in a heavy labor job stacking batteries. Dr. Fretz further noted that Trimmer specifically denied any injury or trauma to the left shoulder or any specific event that he could relate to the beginning of the shoulder pain. Dr. Fretz indicated in his records that Trimmer had the onset of pain while working on the line and that the doctor felt it was from a degenerative type condition.

Trimmer next saw Dr. Wendall Bronson for his shoulder pain in February 2004. Dr. Bronson's record of that visit indicates that Trimmer reported that he had "injured his left shoulder last October." Dr. Bronson prescribed physical therapy. At an office visit in May 2004, Dr. Bronson noted that Trimmer's left shoulder "has been bothering him since he fell on it in September." Dr. Bronson noted no improvement from the physical therapy, and he gave Trimmer a cortisone injection in his shoulder. Dr. Bronson ordered an MRI, which showed that

Trimmer had suffered a tear of the supraspinatus tendon.[1]  Dr. Bronson referred Trimmer to Dr. Bruce Smith, an orthopedic surgeon.

Trimmer saw Dr. Smith for an evaluation on May 24, 2004.  Dr. Smith's office note indicates that Trimmer told him that he had injured the shoulder in a fall at work eight months earlier.  The note states that the MRI scan showed that Trimmer had suffered a rotator cuff tear. Dr. Smith recommended surgery.

### Initial Workers' Compensation Claim and Hearing

Trimmer filed a claim for compensation with the Division of Workers' Compensation ("Division") on May 17, 2004.  In it, he alleged that, on September 9, 2003, he had injured his shoulder when he "slipped on small rocks from skids that were shipped in from another plant while stacking batteries."  The claim was subsequently amended on September 16, 2004, to state simply that the injury to his left shoulder occurred when the employee "fell."

The Employer denied liability, and a hearing was held before an Administrative Law Judge ("ALJ") on August 10, 2005.  At the outset of that hearing, the ALJ stated that the parties had agreed that the following issues would be determined at the hearing:

> One, whether or not the claimant sustained an accident or occupational disease arising out of and in the course of his employment.

During the course of the hearing, Trimmer presented evidence suggesting that his left shoulder injury was the result of a fall on September 9, 2003.  He testified and introduced the statement of injury, the claim for compensation, Dr. Smith's records and medical report, and a summary of his medical expenses.  Employer presented evidence to undermine Trimmer's

---

[1]The "supraspinatus" is "one of the muscles making up the rotator cuff of the shoulder, and that rotates the humerus laterally and helps to abduct the arm."  MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/medical/supraspinatus, (last visited March 30, 2015).

credibility regarding the alleged fall and to show that Trimmer's left shoulder complaints came on gradually, rather than as the result of an accidental injury. Employer presented the testimony of two supervisors[2] and the investigative report, which recounted Trimmer's claim that "when he was stacking off, he heard a popping" in the shoulder. Employer also introduced the treatment records of Dr. Fretz, which were admitted over Trimmer's objection.[3]

On September 15, 2005, the ALJ issued his award denying Trimmer's claim. The award stated that "Claimant failed to meet his burden of proof that established he sustained an injury by accident or occupation [sic] arising out of his employment." The ALJ further stated:

> This is a troublesome case because I suspect that the claimant's injury to his left shoulder was the result of 30 years of hard physical labor performed for the employer. This should have been compensable. However, the claimant has pled an alleged injury from a fall.

The ALJ concluded that, "[b]ecause of the contradiction of the notes of Dr. Fretz," Trimmer failed to establish "that he sustained an accidental injury on September 9, 2003."

Trimmer appealed to the Commission, which affirmed and adopted the award of the ALJ. Trimmer did not appeal to the Missouri Court of Appeals. As a result, that award is final.[4]

### Subsequent Claim and Hearing

On October 21, 2005, Trimmer filed a second claim for compensation for his injured shoulder in which he alleged an occupational disease resulting from the repetitive nature of his work. This time, Trimmer alleged that his shoulder condition (the same rotator cuff injury

---

[2]Neither was the supervisor who had signed the injury report and completed the investigative report.

[3]As noted, those records reflected Trimmer's denial of any specific event that he could relate to the beginning of the shoulder pain and Dr. Fretz's belief that the shoulder pain was from a degenerative type condition.

[4]Under section 287.495, RSMo 2000, "[t]he final award of the commission shall be conclusive and binding unless either party to the dispute shall, within thirty days from the date of the final award, appeal the award to the appellate court." Like a judgment of a court of law, a final award of the Commission "is not open to collateral attack." *See Barry, Inc. v. Falk*, 217 S.W.3d 317, 320 (Mo. App. 2007).

4

litigated in the earlier hearing) had manifested itself on the same date, September 9, 2003, and was the result of an occupational disease. The Employer again denied liability.

At the temporary hearing on this second claim in December 2010, Employer asserted that the claim was barred by *res judicata* because it involved the same injury for which a hearing was held in August 2005 and benefits were denied. The ALJ stated that the issues to be decided were (1) "did the claimant sustain an injury by occupational disease arising out of and in the course of his employment," (2) "medical causation," and (3) "was the claim banned by *res judicata* or collateral estoppel." Trimmer again testified that for the majority of the time that he had worked at Johnson Controls, including on September 9, 2003, his duties involved stacking on and stacking off batteries, and he described the nature of that work. Trimmer acknowledged that he had told various doctors and testified at the August 2005 hearing that in September 2003, he injured the shoulder when he slipped and fell at work. He also acknowledged that both the earlier claim and his current claim involved the same medical condition in the left shoulder, that both claims arose on the same date and that he was still seeking the same treatment, the surgery recommended by Dr. Smith, to treat the shoulder condition.

Trimmer introduced his statement of injury from September 9, 2003, the Employer's investigative report, his treatment records from OHS and Dr. Fretz, and the records of Dr. Bronson and Dr. Smith. Trimmer also introduced a report prepared by Dr. Fernando Egea, who had evaluated him after the August 2005 hearing. Employer introduced the depositions of Dr. Smith and Dr. Egea. In support of its *res judicata* claim, Employer introduced the transcript of the August 2005 hearing, which was admitted into evidence over Trimmer's objection.

On February 17, 2011, the ALJ entered a temporary award allowing compensation and ordering the Employer to provide the recommended treatment. The ALJ concluded: "I find and

5

believe from the evidence that the claimant has sustained an occupational disease to his left shoulder by his repetitive lifting and moving the heavy batteries."  The ALJ rejected Employer's argument that the claim was barred by the doctrine of *res judicata*.  The Commission affirmed and adopted the temporary award.

At the hearing for a final award on December 17, 2013, Trimmer testified that he continued to have complaints and difficulties with his left shoulder.  Trimmer introduced the transcript and awards from the temporary award proceeding, and both parties introduced medical records that arose after the temporary proceeding.  Employer again argued that the claim was barred by *res judicata*, and the ALJ determined, once again, that it was not.  Employer appealed, and the Commission affirmed the award and adopted the ALJ's decision as its own.  The Commission made its own additional findings regarding *res judicata*, which we discuss *infra*.

**Standard of Review**

Our review of the Commission's decision is governed by article V, section 18, of the Missouri Constitution and section 287.495, RSMo 2000.[5]  Article V, section 18, provides for judicial review of the Commission's award to determine whether the decision is authorized by law and, in cases in which a hearing is required by law, whether the decision is "supported by competent and substantial evidence upon the whole record."  Under section 287.495, we must affirm the Commission's decision unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or there is not sufficient competent evidence in the record to warrant the making of the award.

---

[5]We review the findings of the Commission and not those of the ALJ.  *Arciga v. AT&T*, 366 S.W.3d 91, 94 (Mo. App. 2012).  However, where the Commission's award attaches and incorporates the ALJ's award and decision, as in this case, we consider the findings and conclusions of the Commission as including the ALJ's award.  *Id*.

Resolution of this case requires a determination as to whether the Commission "acted in excess of its powers." The dispositive issue is whether the claim is barred by the doctrine of *res judicata*, which is a question of law. *See Overcash v. Yellow Transit Co.*, 180 S.W.2d 678, 684 (Mo. 1944). While we defer to the Commission on issues of fact and the credibility of the witnesses, *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013), we afford no deference to the Commission's interpretation and application of the law. *Pierson v. Treasurer of State*, 126 S.W.3d 386, 387 (Mo. banc 2004).

## Discussion

In Point I, Employer contends that the Commission erred in its award of benefits because the doctrine of *res judicata* bars Trimmer's claim, in that it is an attempt to re-litigate his earlier claim for the same September 9, 2003 shoulder injury under an alternative legal theory.

The doctrine of *res judicata*, or "claim preclusion," prohibits a party from bringing a previously litigated claim. *Chesterfield Vill., Inc. v. City of Chesterfield,* 64 S.W.3d 315, 318 (Mo. banc 2002). It also precludes a litigant from bringing, in a subsequent lawsuit, claims that *should* have been brought in the first suit. *Id.* For *res judicata* to adhere, these "four identities" must be present in both actions: the identity of (1) the thing sued for; (2) the cause of action; (3) the persons and parties to the action; and (4) the quality of the person for or against whom the claim is made. *King Gen'l Contr., Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. banc 1991). In addition, a final judgment on the merits must have been entered in the original action. *Dilallo v. City of Maryland Heights*, 996 S.W.2d 675, 677 (Mo. App. 1999). In brief, *res judicata* bars the same parties from re-litigating the same cause of action that has been previously adjudicated by a final judgment on the merits, or from later raising a claim stemming from the same set of facts that should have been raised in the first

7

suit. *Kinsky v. 154 Land Co., LLC*, 371 S.W.3d 108, 112 (Mo. App. 2012) (citing *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 715-16 (Mo. banc 2008)).

Employer contends that *res judicata* applies here because, in the earlier case, Trimmer presented his shoulder injury claim on *both* an occupational disease theory and an accidental injury theory and received a final ruling denying compensation as to both claims.

We agree. In May 2004, Trimmer filed a claim for compensation alleging that he had suffered a left shoulder injury arising out of and in the course of his employment for employer on September 9, 2003. At the hearing on that claim, the parties stipulated that the ALJ would hear evidence upon and resolve the following issues: "[W]hether or not the claimant sustained an accident *or occupational disease* arising out of and in the course of his employment." (Emphasis added.) During the course of that hearing, Trimmer presented evidence suggesting that his left shoulder injury was the result of a fall on September 9, 2003. Employer introduced evidence to undermine Trimmer's credibility regarding the alleged fall and introduced medical records suggesting that Trimmer's left shoulder complaints came on gradually, rather than as the result of an accidental injury. Despite having stipulated that the ALJ would consider and determine the occupational disease issue, Trimmer failed to present evidence sufficient to meet his burden of proving that his left shoulder injury was the product of an occupational disease.

As the dissenting Commissioner in this case aptly explained:

> [T]he parties stipulated at the [earlier] hearing . . . that the [ALJ] would consider and resolve the issue whether employee's left shoulder injury was the product of an occupational disease. "Stipulations are controlling and conclusive, and the courts are bound to enforce them." *Boyer v. Nat'l Express Co.,* 49 S.W.3d 700, 705 (Mo. App. 2001). Of course, "[a] stipulation should be interpreted in view of the result which the parties were attempting to accomplish." *Id.*

8

That Commissioner further noted that, although Trimmer's earlier claim for compensation "appears to allege" an accidental injury, "the parties did not ask the [ALJ] to confine his determinations solely to the issue of accident," nor did Trimmer's counsel indicate a desire to preserve the occupational disease claim in order to file it at a later date. Instead, counsel specifically agreed that the ALJ had correctly recited the issues for trial.

In September 2005, the ALJ issued an award denying compensation and concluding, in part, that "[Trimmer] failed to meet his burden of proof that established he sustained an injury by accident or occupation [sic] arising out of his employment."[6] The Commission affirmed that decision and adopted the award as its own. Trimmer did not appeal to this Court, and, thus, the Commission's award, concluding that Trimmer did not prove that he suffered a compensable left shoulder injury by accident or occupational disease, was final. That final decision bars Trimmer from re-litigating the occupational disease claim in his second lawsuit. *See Kesterson*, 242 S.W.3d at 715-16; *Kinsky*, 371 S.W.3d at 112 (*res judicata* bars same parties from re-litigating same cause of action that has been previously adjudicated by a final judgment on the merits).

Trimmer claims, nevertheless, that *res judicata* does not apply here because his two lawsuits are not the "same cause of action," in that only the accidental injury claim has been adjudicated, and the occupational disease claim raises a "separate and distinct" claim, citing *Holaus v. William J. Zickell Co.*, 958 S.W.2d 72 (Mo. App. 1997), *overruled on other grounds*,

---

[6]Trimmer contends that this "is not an integral part" of the decision, in that it appears in the summary of the award, and that the ALJ's actual conclusion was simply that Trimmer did not prove that he sustained an accidental injury. He cites the ALJ's statements elsewhere in the award (1) that he suspected that "the claimant's injury to his left shoulder was the result of 30 years of hard physical labor performed for the employer," which "should have been compensable," and (2) that "the claimant has failed to meet his burden of establishing that he sustained an accidental injury on September 9, 2003." Despite these gratuitous and somewhat contradictory comments, we find that Trimmer's occupational disease claim was fully adjudicated at the original hearing. We also reject Trimmer's claim that these comments somehow show that the ALJ "expressly reserved" a second action on the occupational disease claim. There is no evidence to support that supposition.

9

*Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 224 (Mo. banc 2003)).  In *Holaus*, the claimant filed a claim for compensation in 1990 and an amended claim for compensation in 1992, both of which alleged an injury to his right shoulder as the result of an August 21, 1990 attack by a co-worker.  958 S.W.2d at 75-76.  Three years later, Holaus filed a second amended claim for compensation which alleged the same date of accident/occupational disease but also claimed that "employee had been repeatedly exposed to lifting and carrying heavy carpet on his right shoulder causing pain and weakness" to that shoulder.  *Id*. at 76.  The employer argued that the occupational disease claim was barred by the statute of limitations.  *Id*.  The claimant argued that it was not barred because the claim "related back" to the claim of injury in his timely first amended claim.[7]  *Id*. at 79.  The *Holaus* Court held that the occupational disease claim did not "relate back" to the original claim for purposes of avoiding the statute of limitations because the second amended claim "create[d] a new and distinct claim" that "did not arise from the incident alleged [to have caused the injuries] in employee's first two petitions." *Id*. at 80-81.

Trimmer suggests that *Holaus* stands for the proposition that an occupational disease claim is inevitably "separate and distinct" from a claim of accidental injury and is controlling here.  We disagree.  In this case, unlike *Holaus*, Trimmer did not attempt to amend his petition to add a claim that "did not arise from" the conduct alleged to have caused the injuries in his first claim.  Rather, Trimmer's allegations of accidental injury and occupational disease, and the conduct alleged to have caused both, have been intertwined from the very beginning of Trimmer's case (as evidenced by the parties' agreement that both would be decided at the first hearing).  In that regard, this case is more akin to *Ford v. American Brake Shoe Co*., 252 S.W.2d

_____

[7]*Holaus* explains "relation back" as a common law rule stating that "whenever a claim asserted in an amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."  958 S.W.2d at 79.

10

649, 651-52 (Mo. App. 1952) (distinguished by *Holaus*), which is often cited for the proposition that an amended claim of occupational disease (in that case, silicosis due to exposure to harmful substances) can relate back to the original claim of injury by accident (there, swallowing sand on a single occasion) where its effect is merely to "perfect and amplify" the original claim.[8]

In addition, *Holaus* involved the application of the statute of limitations and not the barring of the claim by *res judicata*, which is the issue here. The fact that the attempted addition of the occupational disease claim in *Holaus* did not "relate back" to the accidental injury claim does not establish, *ipso facto*, that Trimmer's occupational disease claim in this case avoids the bar of *res judicata*. *See Kelley v. Banta & Stude Const. Co., Inc.*, 1 S.W.3d 43, 51 (Mo. App. 1999) (rejecting the argument that an amended claim of occupational disease did not relate back to a claim of accidental injury for purposes of deciding which insurance carrier was liable for the amended claim and distinguishing *Holaus* on the basis that "*Holaus* does not stand for the proposition that an amended claim does not relate back to a prior claim made before the employer changed insurance carriers when the only issue is which of two successive insurers is liable on a claim"); *see also* Mary Kay Kane, *Original Sin and the Transaction in Federal Civil Procedure*, 76 Tex. L. Rev. 1723, 1739-40 (1998) (comparing the term "transaction" as used in various federal civil procedure settings, including "relation back" and *res judicata*, the author observes that, in the context of *res judicata*, "fairness [often] encourages a broader interpretation of what is involved in the transaction in order to provide repose and to protect the defendant

---

[8]We also reject Trimmer's suggestion that *res judicata* does not apply because these claims arise under different statutes (§ 287.120.1, RSMo 2000, for accidental injury, and §§ 287.063 & .067, RSMo 2000, for occupational disease). *See Overcash*, 180 S.W.2d at 679-84 (where Kansas resident was fatally injured on the job in Missouri, the Court explained that an injury in one state does not give rise to two causes of action "merely because recovery in each state is under a different statute, or because each affords a different measure of recovery").

11

from multiple litigation," whereas "fairness concerns underlying [relation back] suggest a narrower construction of the transaction in order to avoid undue surprise to the defendant").

In any event, regardless of whether or not the occupational disease claim was actually decided in the first case, and despite *Holaus*'s conclusion that the two claims were separate and distinct in that case, Trimmer's occupational disease claim still is barred by the doctrine of *res judicata* because that doctrine precludes a litigant from later bringing a claim that *should* have been brought in the first lawsuit. *Kesterson*, 242 S.W.3d at 715. *Res judicata* applies "**to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time**." *King*, 821 S.W.2d at 501 (emphasis added). "Put otherwise, a party may not litigate an issue and then, upon an adverse verdict, revive the claim on cumulative grounds which could have been brought before the court in the first proceeding." *Id*. The doctrine of *res judicata* is closely related to the rule against splitting a cause of action, which provides that "[a] cause of action which is single may not be split and filed or tried piecemeal, the penalty for which is that an adjudication on the merits in the first suit is a bar to a second suit." *Id*. at 501 (citations and quotation marks omitted).

In general, the test for determining whether a cause of action is single and cannot be split is: (1) whether the separate actions arise out of the same act, contract, or transaction; (2) or whether the parties, subject matter, and evidence necessary to sustain the claim are the same in both. *Id*. If the claim *does* arise out of the same "act, contract or transaction," the claim is barred by the original judgment under the doctrine of *res judicata*. *Kesterson*, 242 S.W.3d at 716. The word "transaction" in this context "has been defined as the aggregate of all the circumstances which constitute the foundation for a claim" and "includes all of the facts and circumstances out of which an injury arose." *King*, 821 S.W.2d at 501. Considerations in determining what facts

12

are included in a transaction include "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations[.]" *Kesterson*, 242 S.W.3d at 715 n.4 (quoting Restatement 2d of Judgments § 24 (2007)). The court also examines whether the parties, subject matter, and evidence required to sustain the claim are the same in both actions. *Id.* at 716.

Claim preclusion also "prevents reassertion of the same claim even though additional or different evidence or legal theories might be advanced to support it." *Chesterfield Vill.*, 64 S.W.3d at 320. "A somewhat altered legal theory, or even a new legal theory, does not support a new claim based on the same operative facts as the first claim." *Id.* at 321. A claim based on an alternative legal theory, but growing out of the same facts and filed against the same party, is considered the same cause of action, even if the alternative theories "depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *See King*, 821 S.W.2d at 501.

In *Chesterfield Village*, for example, the Village obtained a judgment declaring the City's zoning of a certain tract of land illegal. 64 S.W.3d at 316-17. Three years after the City rezoned the tract in accordance with that judgment, the Village filed a second action seeking damages from the City for impairing the value of the tract before it was rezoned. *Id.* at 317. The Missouri Supreme Court affirmed the trial court's dismissal of the second suit under the doctrine of *res judicata*. *Id.* at 317-21. The Court found that the claim in the second action was part of the claim in the first action, in that "the operative facts upon which both cases were based were the actions of the city in its 1994 zoning decision" and this new claim for damages "could well have been included in the first action." *Id.* at 320. *See also Chadd v. City of Lake Ozark*, 326 S.W.3d 98, 102-03 (Mo. App. 2010) (held that claim for lost wages arose out of the same act as prior

13

claim for reinstatement and, thus, should have been brought in the first suit, since the discharge formed the bases of both claims and "the same operative facts gave rise to" both lawsuits).

Here, too, "the same operative facts gave rise to" both of Trimmer's claims. In 2004, Trimmer filed a claim against Employer alleging that the incident involving his shoulder on September 9, 2003, was a covered injury under the Workers' Compensation Act, and that issue was adjudicated to finality, starting with the hearing of August 10, 2005, and ending with the final award of the Commission, which was not further appealed. Trimmer's second claim is in effect a reassertion of that claim. All the elements for the application of the doctrine of *res judicata* are present, in that, in both cases, the same parties were present before the court, the same damages were in issue, and both hearings involved the same operative facts, including the same medical and testimonial evidence, the same injury to the same body part, the same date of occurrence, same incurred medical treatment, and same proposed treatment.

The fact that evidence of an occupational disease was presented at the first hearing[9] is also confirmed by the ALJ's statement, following that hearing, that he believed "the claimant's injury to his left shoulder was the result of 30 years of hard physical labor" and "should have been compensable" as an occupational disease. Moreover, Trimmer's brief confirms that he, in fact, was aware of and should have brought the occupational disease claim at the time of the original hearing (if, as Trimmer claims, he did not). It states:

> The evidence clearly establishes that Mr. Trimmer did suffer an occupational disease resulting in the pain to his shoulder on September 9, 2003. As indicated at the outset by Dr. Fretz in his office note of October 27, 2003, Mr. Trimmer reported to him that the pain had come on gradually, there was no episode at work that clearly caused any injury and that Mr. Trimmer does work in a heavy labor

---

[9]That evidence consisted of documents that Trimmer later presented at the 2010 hearing on his occupational disease claim, *e.g*., his statement of injury and the investigative report (neither of which mentions a fall as the source of the injury), his treatment records from OHS and Dr. Fretz, and the records of Dr. Smith.

14

job stacking batteries. Dr. Fretz further indicated that Mr. Trimmer specifically denied any injury or trauma to the left shoulder nor did Mr. Trimmer have any specific event that he could relate to the beginning of his shoulder pain.

Based on the foregoing, we conclude that Trimmer is seeking to litigate in his second lawsuit a claim that either *was* or *should have been* brought in the first lawsuit. Consequently, in light of the foregoing precedent, we find that the claim underlying this appeal is barred by the doctrine of *res judicata*. The Commission erred in concluding that it was not.

As noted, the Commission made its own additional finding that the claim was not barred by *res judicata* because (1) the ALJ rejected that argument in the temporary award, (2) the Commission affirmed that decision, and (3) at the hearing on the final award, the Employer did not present any additional evidence as to *res judicata*, citing *Jennings v. Station Casino St. Charles*, 196 S.W.3d 552, 558 (Mo. App. 2006) (modification of a temporary award requires "additional significant evidence" not before the ALJ at the time of the temporary award). Therefore, the Commission concluded, the temporary award must stand.

We disagree. The Commission may have been entitled to refuse to reconsider the *res judicata* issue, since it had addressed that issue in connection with the temporary award. This application of the "law of the case" does not apply to *this Court*, however, because no appeal to this Court was taken from the temporary award. Therefore, this appeal represents *our* first opportunity to address the *res judicata* issue, and, for the reasons stated herein, we conclude that the employee's claim in the second case should have been dismissed pursuant to the doctrine of *res judicata*.[10]

---

[10]Our decision that the claim in this case is barred by the doctrine of *res judicata* is dispositive; thus, we do not reach the question asserted in Employer's Point II, which is whether Trimmer suffered an occupational disease.

15

## Conclusion

Based on the foregoing, we reverse the judgment and remand to the Commission for dismissal of the claim.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Presiding Judge

All concur.