**CONAGRA FOODS, INC., Appellant,**

v.

**Jon PHILLIPS, Respondent.**

**WD 80535**

Missouri Court of Appeals,
Western District.

OPINION FILED: SEPTEMBER
5, 2017

John R. Fox, Kansas City, MO, Counsel for Appellant.

Corey D. Jackson, Columbia, MO, Counsel for Respondent.

Before Division Two: Edward R. Ardini, Jr., Presiding Judge, Karen King Mitchell, Judge, Anthony Rex Gabbert, Judge

Anthony Rex Gabbert, Judge

ConAgra Foods, Inc. (ConAgra) appeals the final award of the Labor and Industrial Relations Commission (Commission) granting Jon Phillips permanent partial disability benefits, temporary total disability benefits, and medical expenses for a 2013 injury that was sustained while Phillips was at work. ConAgra asserts two points on appeal. ConAgra contends that the Commission erred in finding that Phillips sustained an injury arising out of and in the course of his employment because the competent and substantial evidence showed that the injury resulted from non-compensatory idiopathic causes. ConAgra further contends that the Commission erred in finding that Phillips sustained an injury arising out of and in the course of

his employment by concluding that the source of Phillips's injury was a workplace ramp because workers would have been equally exposed in nonemployment life to conditions such as the ramp from which Phillips fell. We affirm.

The Commission's Findings of Fact, which are not disputed by ConAgra, are as follows: Phillips worked as a forklift driver for ConAgra and its predecessors for almost thirty-two years prior to October 14, 2013, when he sustained an injury after falling off of a shallow graded ramp while entering ConAgra's break room. The ramp had no safety rail. The day after Phillips's fall, ConAgra ordered the installation of a hand rail, "to prevent Team Members from Falling/slipping off the graded drop off."

A Grundy County ambulance report states that, upon arrival at the site of the injury, "According to witnesses and pt., his leg gave out and pt. fell to concrete floor landing on left hip area. Pt. stated same leg had been broken in 4 places before...." The ambulance transported Phillips to Wright Memorial Hospital where he was seen by Dr. James Dickie approximately one hour after the fall. Dr. Dicke's report states: "FALL. LEFT HIP INJURY ... Occurred at work. (leg gave out on him causing him to fall). The patient complains of severe pain." An x-ray showed that Phillips had fractured his left hip. Emergency medical technicians gave Phillips morphine and then transferred him to Liberty Hospital where he had surgery to repair his left hip the same day.

Three weeks after sustaining the injury, Phillips filed a Claim for Compensation with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation, stating that while in the course and scope of employment, he "slipped and fell from an inclined ramp," injuring his left hip.

Dr. Truett L. Swaim examined Phillips approximately four months after the fall at the request of Phillips's attorney. Dr. Swaim's report states, in pertinent part:

He [employee] ... was stepping off of a ramp to go to the [break room] vending machine and unexpectedly fell. The ramp had no rail. He estimates his step-off was approximately 4-5 inches. He does not know why he fell.

On May 6, 2015, Dr. P. Brent Koprivica examined Phillips at the request of ConAgra's attorney. Dr. Koprivica's report states, in pertinent part:

Mr. Phillips ... was stepping down about 4 to 5 inches from the angled ramp that goes up to the break room. As he was stepping down to a level area where the vending machines are placed, he believes he caught his heel on his left boot on the edge of the ramp causing him to fall. He fell directly on his left hip and left leg in the fall.

Dr. Koprivica explored idiopathic causes of the injury when he examined Phillips. Koprivica considered idiopathic to mean "not arising out of and during the course of his employment as being the precipitating event" for which Phillips "would have been at that same risk if he had been at work or away from work." Based on the history provided by Phillips, Koprivica concluded that Phillips's October 14, 2013, injury was work-related and not idiopathic in nature. Koprivica considered Phillips to be "a very straight forward person, and when I asked him a question, he answered it; and I didn't think there was any evasiveness on his part. I mean, I thought he was an honest person.... That was my perception."

Phillips testified at the hearing on his case. He stated that, in compliance with ConAgra's rule, he wore steel-toed shoes with heavy waffled rubber soles to work

the day of the injury. At approximately 9:00 a.m. on October 13, 2013, he "started up the ramp ... to get a snack ... and I turned to come off of that ramp and caught my heel on it. And the next thing I knew I was laying on the floor and laying back against the vending machines." Phillips testified "I don't remember how I fell, except my heel, I believe, caught on that ramp." Later he testified, "I'm not really sure, but I think my heel caught." He testified that he was "pretty sure" his left foot caught on the ramp. The area of the ramp Phillips fell from was about five inches high. The ramp had yellow paint with a rough, bumpy texture that "had wore down some."

Phillips had no recollection of any conversations with ambulance personnel on the date of the injury. He testified that he told Dr. Swaim on February 24, 2014, he did not know why he fell. Phillips did not remember talking to Dr. Koprivica about why he fell. Phillips believed he told Dr. Koprivica that he "didn't know how I fell." Phillips also testified he thought it was possible that he told Dr. Koprivica "I don't know how I fell, except that I caught my heel on that boot on that ramp."

Phillips sustained an injury to his left knee while working on a farm in 1991, breaking his knee in four places. He had surgery to repair his knee and subsequently felt pain in his left knee with weather changes but testified that "it didn't bother me too much." Prior to the October 4, 2013, injury, Phillips's left knee had never buckled causing him to fall.

 Section 287.495[1] requires that we affirm the Commission's decision unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists in the record to warrant the making of the award. We give no deference to the Commission's interpretation and application of the law and review the same *de novo. Pierson v. Treasurer of State*, 126 S.W.3d 386, 387 (Mo. banc 2004). We review the findings of the Commission and not those of the Administrative Law Judge. *Johnson Controls, Inc. v. Trimmer*, 466 S.W.3d 585, 590 n.5 (Mo. App. 2015). "However, where the Commission's award attaches and incorporates the ALJ's award and decision, ... we consider the findings and conclusions of the Commission as including the ALJ's award." *Id.* " 'We review the whole record to determine whether there is sufficient competent and substantial evidence to support the award or if the award is contrary to the overwhelming weight of the evidence." ' *Gleason v. Treasurer of State of Missouri-Custodian of Second Injury Fund*, 455 S.W.494, 497 (Mo. App. 2015) (quoting *Smith v. Capital Region Med. Ctr.*, 412 S.W.3d 252, 258 (Mo. App. 2013)). " 'The Commission is free to believe or disbelieve any evidence, and we defer to the Commission's credibility determinations." ' *Id.*

 Any claim that an injury is noncompensable because it had an idiopathic cause is in the nature of an affirmative defense. *Gleason*, 455 S.W.3d at 502. Contrary to ConAgra's assertion on appeal, ConAgra had the burden of proving an idiopathic cause as Section 287.020.3(3) allows an idiopathic cause to be presented as an affirmative defense. *See Id.* at n.6. Section 287.020.3(3) states that "An injury resulting directly or indirectly from idiopathic causes is not compensable." Hence, even in cases where there may be a "risk

---

**1.** All statutory references are to the Revised Statutes of Missouri as supplemented through January 1, 2017, unless otherwise noted.

source" at the place of employment, if the cause of the injury is directly or indirectly idiopathic and not caused by the risk source, there can be no award of compensation as proof of this affirmative defense excludes from compensation what might otherwise be a compensable injury. *See Gleason*, 455 S.W.3d at 502 n.6.

In ConAgra's first point on appeal, it contends that the Commission erred in finding that Phillips sustained an injury arising out of and in the course of his employment because, pursuant to Section 287.020.3(3), an injury resulting directly or indirectly from idiopathic causes is not compensable. ConAgra contends that the competent and substantial evidence is that Phillips's injury was caused by his previously damaged left leg giving out on him, as established by Phillips's testimony and the medical evidence, and not caused by Phillips catching his boot heel on the ramp inasmuch as that was based only on the speculative testimony of Phillips and not on competent and substantial evidence.[2] ConAgra quotes the Commission's finding that Phillips "simply does not know what happened, but his best explanation is that he caught his heel" and argues:

> The Commission picked a story that was not in any of the health care medical records; not in the ambulance records; not in the Claim for Compensation; not in the medical report of Dr. Swaim, the physician picked by his attorney; and not in Employee's sworn deposition testimony. The story picked by the Commission was, for the first time, found in the report of Dr. Brent Koprivica, nineteen (19) months after the fall.

ConAgra asserts that "[i]t is a well-accepted axiom in workers' compensation litigation that the history given by a claimant as to how the accident occurred which is closest in time to the accident itself is generally the most credible history." ConAgra claims that Phillips "gave a very specific and consistent history to two separate sources on the day of the accident of his leg giving out on him, causing him to fall." ConAgra specifically references the ambulance report, a doctor's report from Wright Memorial Hospital, and a nurse's report from Wright Memorial Hospital. ConAgra claims that these accounts, along with the medical evidence that Phillips had a prior injury to his left leg, prove that the cause of the fall was not work-related but idiopathic. We disagree.

First, while the Commission affirmed and adopted the award of the ALJ, it supplemented the ALJ's decision with the Commission's Supplemental Opinion. In that Supplemental Opinion the Commis-

---

**2.** Phillips contends that, pursuant to *McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473 (Mo. Banc 2009), ConAgra waived this claim on appeal for failing to set forth the affirmative defense of an idiopathic cause in its answer to Phillips's Claim for Compensation. We disagree. In answer to Phillips's Claim for Compensation, ConAgra denied all "statements, allegations and paragraphs of the Claim for Compensation" except for paragraph fourteen which alleged that the injury did not result in death. Hence, ConAgra denied Phillips's claim that he sustained an injury while in the course and scope of employment, as stated in paragraph nine of Phillips's claim, and defended that position at the hear-

ing before the administrative law judge by arguing that the cause of Phillips's fall was idiopathic in nature and not employment related. "It is enough that the defense has been litigated before the Commission, whether pleaded or not. [A] defense which has been neither pleaded nor tried before the Commission is not a subject for appellate review." *Snow v. Hicks Bros. Chevrolet, Inc.*, 480 S.W.2d 97, 100 (Mo. App. 1972). *McCracken* is inapplicable here as it involves the failure of an employer to plead an employee's "statutory employee" status under the Workers' Compensation Act as an affirmative defense to a tort claim brought in circuit court.

sion emphasized that, Phillips's statements describing the details of the accident over a two-and-a-half year period varied. The Commission found Phillips credible, nonetheless, and concluded that Phillips's inconsistencies were understandable given the nature of the incident. Ultimately, the Commission found that Phillips's inability to explain exactly how the accident occurred did not preclude recovery—that Phillips had proven that the employer's unguarded ramp constituted a risk source not encountered in Phillips's everyday life, and that no expert medical evidence supported ConAgra's contention that Phillips's injury was caused by an idiopathic condition. Moreover, the Commission concluded that Phillips's injuries arose out of and in the course of employment because Phillips fell on an employer risk source and the fall resulted in his injuries.

Second, the evidence regarding the "history" given by Phillips just after the accident is as follows. Phillips's accident occurred at approximately 9:00 a.m. on October 14, 2015. An ambulance arrived at Phillips's workplace to transport him to the hospital. The ambulance report on the date of the accident states: "According to witnesses and pt., his left leg gave out and pt. fell to concrete floor landing on left hip area. Pt. stated same leg had been broken in 4 places before." The ambulance transported Phillips to Wright Memorial Hospital.

At Wright Memorial Hospital, Phillips was assessed by Kevin Hoffman, RN, beginning at 9:46 a.m. In Hoffman's report, times are listed in detail for each piece of information obtained or each service provided directly or witnessed by Hoffman.[3] The "History" portion of Hoffman's report, which includes the statement: "This occurred just prior to arrival. Mechanism of

injury: fell while standing and landed on a concrete surface" is the only part of Hoffman's report without a recorded time as to when the information was received. The "Historian" of this report is listed as "patient, family, spouse and EMS." Hoffman's report indicates that Hoffman personally completed a "physical assessment" of Phillips beginning at 9:50 a.m. and ending at 10:06 a.m. Hoffman recorded the following:

09:50 10/14/2013. To room via stretcher. Oriented X 4. Appears in pain. Capillary refill in less than 2 seconds in the extremities. Extremity pulses are within normal limits. Neuro-vascular status intact to the extremity. Left hip: tenderness. Left knee: tenderness. Skin intact. Skin is warm and dry. (PATIENT STATED THAT HE WAS AT WORK IN THE BREAK ROOM SLID OFF THE SIDE OF A RAMP LANDED ON HIS LEFT HIP. ON SCENE EMS STARTED A SASLINE LOCK IN PATIENTS LEFT AC WITH 20G, ANGIO X 1 ATTEMPT, PATIENT WAS GIVEN MORPHINE 4 MG IVP. AT TIME OF ASSESSMENT PATIENT RATES PAIN AT 10 ON A 1-10 SCALE, PATIENT ALSO LYING IN A POSITION OF COMFORT. SPOUSE AT BEDSIDE.).—10:06 Kevin Hoffman, RN

At 11:02 a.m., Nurse Hoffman wrote:

11:02 10/14/2013. (PATIENT LYING ON ER CATRT [sic] CONTINUES TO RATE PAIN AT 10 ON 1-10 SCALE, STATES THAT HE WAS WALKING ONE MINUTE AND THE NEXT MINUTE HE LANDED ON THE FLOOR AND HIS LEFT HIP WAS HURTING.).—11:02 Kevin Hoffman, RN

Hoffman attended to Phillips prior to and after Phillips was evaluated by Dr. John Dickie at 10:10 a.m. A Clinical Report

---

**3.** Every minute detail of interaction Hoffman had with Phillips is time stamped: The brakes of Phillips's hospital bed were put on at 10:07 a.m., Phillips was put in a hospital gown at 10:34 a.m., Phillips was transported to radiology by stretcher at 10:40 a.m., etc.

signed by Dr. Dickie states the following regarding the "history" of the injury:

HISTORY OF PRESENT ILLNESS

Chief Complaint—FALL. LEFT HIP INJURY. The injury occurred just prior to arrival.

Fell. Occurred at work. (leg gave out on him causing him to fall)

The patient complains of severe pain. No blow to the head.

The "historian" for Dr. Dickie's report is noted as being Phillips and EMS personnel.

After careful review of the evidence relied on by ConAgra, we find that ConAgra's assertion that Phillips reported an idiopathic cause for the fall by telling ambulance personnel and two different health care professionals "at two separate facilities, on the same day" that "his left leg gave out on him causing him to fall," is not a completely accurate characterization of the record. While the ambulance report states that Phillips and witnesses stated that "his leg gave out," this is a vague statement and does not prove that Phillips reported an idiopathic cause for the fall; it is plausible that a leg could "give out" after slipping, or could "give out" if landing on something the wrong way. We do not know the exact words used by Phillips or witnesses, or the amount of information provided by each; the report is very brief and does not specify. Phillips testified at the hearing on his case with respect to the ambulance report: "I don't remember saying nothing about my leg giving out." On cross examination, Phillips testified that he recalled the fall, recalled that he did not lose consciousness, recalled that he was not dizzy after the fall, recalled that he recognized one of the ambulance personnel as a "buddy" of his, but could not recall any conversation he had with any of the ambulance personnel, either while they attended him in the break room or while being transported to the hospital. The

Commission found Phillips's testimony to be credible.

We also cannot discern from the record whether the parenthesized portion of Dr. Dickie's record stating "(leg gave out on him causing him to fall)" was a direct statement made by Phillips, as contended by ConAgra, or merely a recitation of the report from the ambulance personnel; the "Historian" of Dr. Dickie's report is listed as "patient and EMS personnel" and this is the only part of the Dr. Dickie's "History" placed in parentheses.

Similarly, the "History" portion of Hoffman's report which states, "This occurred just prior to arrival. Mechanism of injury: fell while standing and landed on a concrete surface," has no time reference suggesting that Hoffman did not collect the "History" directly from the source. Every other portion of Hoffman's report contains a time reference. The "Historian" of Hoffman's report is noted to be "patient, family, spouse and EMS." When Phillips was asked at the hearing on his case about Dr. Dickie's record as well as this specific portion of Hoffman's record his testimony was, "I don't remember saying it." The Commission found Phillips's testimony to be credible.

Significantly, Hoffman's report provides additional information that is completely ignored by ConAgra on appeal although it is within the very medical report ConAgra relies on to argue its point. Sometime between 9:50 a.m. and 10:06 a.m., after the ambulance ride but prior to Phillips meeting with Dr. Dickie, Hoffman collected the following information directly from Phillips: "PHILLIPS STATED THAT HE WAS AT WORK IN THE BREAK ROOM SLID OFF THE SIDE OF A RAMP LANDED ON HIS LEFT HIP." Phillips was not asked about this statement at the hearing on his case although this statement provides the most contemporaneous account of the accident known to have

come directly and solely from Phillips. Phillips put in his Claim for Compensation three weeks after the accident that he "slipped and fell from an inclined ramp." He testified in an October 28, 2014, deposition, "I started to step off the ramp, and my foot slipped." When asked on cross examination at the hearing on his case if the description in the Claim for Compensation as to how the accident happened, that is, he "slipped and fell from an inclined ramp" was accurate, he testified it was "to the best of my knowledge." The Commission found Phillips's testimony to be credible.

While ConAgra attacks Phillips's credibility and the Commission's reliance on his testimony by suggesting that Phillips changed his "story" over time to shoehorn his injury into a worker's compensation claim, this simply is not supported by a thorough review of the entire record. The Commission found any inconsistencies in Phillips's accounts understandable considering the sudden and unexpected occurrence of the injury. We defer to the Commission's findings on issues of fact, the credibility of witnesses, and the weight given to conflicting evidence. *Malam v. State, Department of Corrections*, 492 S.W.3d 926, 928 (Mo. banc 2016). Whether the fall was caused by a "slip" on the ramp or a "snag" on the ramp is of no import at this point; the substantial and competent evidence is that the fall resulted from Phillips's contact with the ramp and not an idiopathic cause. If, as ConAgra asserts, that the statements Phillips made directly after the accident are most indicative of the true cause of his fall, then Phillips's statements after the fall support the Commission's conclusion that the fall was not

idiopathic in nature. Contrary to ConAgra's assertion on appeal, neither Phillips's testimony nor medical evidence [4] prove an idiopathic cause. ConAgra's first point on appeal is denied.

■ In its second point on appeal, ConAgra contends that the Commission erred in finding that Phillips sustained an injury arising out of and in the course of his employment because, pursuant to Section 287.020.3(2), an injury that comes from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life is not compensable. ConAgra contends that neither the height of the ramp, nor the fact that the ramp had no guard rail, nor the fact that Phillips walked around a picnic bench to access the ramp presented a hazard or risk to which workers would not have been equally exposed outside of and unrelated to the employment. We disagree.

■ Phillips had the burden of establishing a compensable claim by proving that his injury arose out of and in the course of his employment. *Gleason*, 455 S.W.3d at 502. In so doing he had to prove the two criteria set forth in Section 287.020.3(2) (a) and (b): [5]

(2) An injury shall be deemed to arise out of and in the course of the employment only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and

(b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the

4. ConAgra's own doctor, Dr. Koprivica, explored idiopathic causes of Phillips's injury and determined the injury to be work-related although Dr. Koprivica was well aware of Phillips's prior injuries.

5. *Id.*

employment in normal nonemployment life.

"For an injury to be deemed to arise out of and in the course of the employment under section 287.010.3(2)(b), the claimant employee must show a causal connection between the injury at issue and the employee's work activity." *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 510 (Mo. banc 2012). "The 'causal connection' standard . . . first requires identification of the risk source of a claimant's injury, that is, identification of the activity that caused the injury, and then requires a comparison of that risk source or activity to normal nonemployment life." *Gleason*, 455 S.W.3d at 499.

Having determined that the cause of Phillips's fall was not idiopathic, there is no dispute that the fall from the employer's ramp was the prevailing cause of Phillips's injuries, thereby satisfying Section 287.020.3(2)(a)'s criteria. With regard to Section 287.020.3(2)(b), the Commission concluded that, while Phillips had been unable to articulate exactly how and why the accident happened,

> The evidence shows that employer required employee to navigate a three to five-inch graded ramp without a guard rail while wearing steel-toed shoes in order to access a designated break area. We find that employer's unguarded ramp constituted a risk source [6] not encountered in employee's everyday life and, therefore, a hazard related to the employment which the worker was not equally exposed to outside of employment in his normal non-employment life.

ConAgra disagrees with this finding and contends that Phillips traverses six-inch stair risers within his own home and, therefore, the three to five-inch-high work ramp presents an even lower risk to which Phillips would be equally exposed in nor-

mal nonemployment life. Yet, ConAgra ignores that stair risers are not equivalent to a sloped incline and typically have a wall or rail on each side. The Commission here emphasized that the *unguarded* ramp was the risk source.

ConAgra's argument is similar to the one rejected by this court in *Lincoln University v. Narens*. Therein, employee Narens broke her ankle while walking down a Lincoln University campus sidewalk on her way to a parking lot. 485 S.W.3d at 813. While walking down the sidewalk, Narens stepped to the right to allow oncoming students passage. *Id*. When Narens stepped to the right, her right foot landed on a steep edge of the sidewalk and turned, causing her to overcompensate to her left, fall, and break her left ankle. *Id*. Lincoln University disputed the Commission's findings that Narens's injury arose out of and in the course of employment contending that walking was the "risk source" and Narens was exposed to walking outside of her employment. *Id*. at 816. This court disagreed and found that "Narens was not injured because she was walking. She was injured because while walking, she encountered a steep drop off on the sidewalk—a risk source that she would not have been equally exposed to outside of the workplace in normal nonemployment life." *Id*. at 818. Similarly here, Phillips was not injured because he was walking or climbing stairs, he was injured while traversing an unguarded incline with steel-toed boots and then falling from that unguarded incline. The Commission committed no error in concluding that Phillips's injury arose out of and in the course of employment pursuant to Section 287.020.3(2)(b). ConAgra's second point on appeal is denied.

We conclude that the Commission did not err in finding that Phillips's injury did

---

6. *See Lincoln University v. Narens*, 485 S.W.3d 811, 817-818 (Mo. App. 2016) (discussing "risk source" and related cases discussing the same).

not result directly or indirectly from idiopathic causes but, rather, that it arose out of and in the course of his employment as there is sufficient competent and substantial evidence in the record to support that conclusion. We affirm the Commission's Award of workers' compensation benefits.

All concur.