Dylan KESLER, Appellant,

v.

The CURATORS OF THE UNIVERSITY OF MISSOURI, et al., Respondents.

WD 79703

Missouri Court of Appeals, Western District.

April 18, 2017

George S. Smith and Andrew G. Heitmann, Columbia, for appellant.

Paul R. Maguffee and Nicholas S. Beydler, Columbia, for respondents.

Before Division Four: Mark D. Pfeiffer, Chief Judge, Presiding, Lisa White Hardwick and Gary D. Witt, Judges

Lisa White Hardwick, Judge

Dylan Kesler appeals the circuit court's entry of summary judgment in favor of the Curators of the University of Missouri ("the University"); R. Bowen Loftin, former chancellor of the University of Missouri–Columbia ("MU"); Mark Ryan, Director of MU's School of Natural Resources; Joshua Millspaugh, a professor in MU's Department of Fisheries and Wildlife Sciences; and Jack Jones, chair of MU's Department of Fisheries and Wildlife Sciences (collectively, "Respondents"), on his petition for damages for wrongful discharge, breach of the covenant of good faith and fair dealing, tortious interference with an employment

expectancy, prima facie tort, and civil conspiracy. Kesler contends the court erred in entering summary judgment because Respondents' summary judgment motion was procedurally deficient and his claims were not barred by res judicata or collateral estoppel and did not fail as a matter of law. For reasons explained herein, we find no error and affirm.

### FACTUAL AND PROCEDURAL HISTORY

From September 2007 to September 2015, Kesler was employed as an assistant professor in MU's Department of Fisheries and Wildlife Sciences. Assistant professors are employed on year-to-year appointments during a probationary period and are then considered for grant of tenure.

Kesler applied for tenure in 2013–2014. While his tenure review process was pending, Kesler was involved in research misconduct proceedings concerning allegations of plagiarism and other misconduct. In June 2014, the research misconduct committee concluded by a 7–2 vote that Kesler had not committed plagiarism but unanimously found that he had engaged in other unacceptable behavior. Specifically, the committee found that his treatment of a former graduate student was unacceptable and that he had published a sole-authored article without citing or referencing that student's work. Kesler's employment as an assistant professor in MU's Department of Fisheries and Wildlife Sciences ended after he was denied tenure in July 2014 and received a one-year terminal contract, which expired September 1, 2015.

In September 2014, Kesler sued the University, Loftin, and Ryan[1] seeking writs of prohibition and mandamus compelling the University to provide new tenure review proceedings, refrain from taking any further action with respect to its pending dismissal of him from employment, and take steps to restore his reputation following the research misconduct proceedings. Kesler's writ case was premised on alleged rule and policy violations and other wrongdoing in the proceedings by Loftin and Ryan, as well as by Millspaugh and Jones. The writ case was litigated extensively, with six rounds of written discovery and a two-day bench trial on the merits, during which Kesler testified and presented testimony from Loftin, Ryan, Millspaugh, and Jones. Ultimately, the court entered judgment against Kesler. In its judgment, the court made detailed findings of fact and conclusions of law explaining why it denied Kesler's writ requests ("*Kesler I*").

Following the court's judgment in *Kesler I*, Kesler filed this lawsuit ("*Kesler II*"). In his petition, he sought damages for wrongful discharge in violation of public policy and breach of the covenant of good faith and fair dealing against the University; for tortious interference with an employment expectancy against Millspaugh; for prima facie tort and civil conspiracy against Millspaugh, Ryan, and Jones; and for prima facie tort against Loftin. Respondents asked the circuit court to stay discovery until it determined whether Kesler's claims were barred by res judicata and collateral estoppel. The circuit court granted a stay. Respondents then moved for summary judgment on the grounds that Kesler's claims against the University, Loftin, and Ryan were barred by res judicata; his claims against Millspaugh and Jones were barred by collateral estoppel; and his claims were legally deficient in

---

**1.** Kesler also sued Kenneth Dean, the interim provost, in *Kesler I*. Dean is not a party in *Kesler II*.

other respects. The court granted Respondents' motion. Kesler appeals.

## STANDARD OF REVIEW

Appellate review of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom the judgment was entered. *Wills v. Whitlock*, 139 S.W.3d 643, 646 (Mo. App. 2004). However, we take as true the facts set forth in support of the summary judgment motion unless contradicted by the nonmovant's response. *ITT*, 854 S.W.2d at 376.

■ Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 74.04(c). Where, as in this case, the movant is the defendant, the movant establishes the right to judgment as a matter of law by showing one of the following:

> (1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense.

*Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 437 (Mo. banc 2013). We will affirm a summary judgment under any theory supported by the record. *Id.*

## ANALYSIS

### Point I—Sufficiency of Respondents' Summary Judgment Motion

■ In Point I, Kesler contends the circuit court erred in granting summary judgment in favor of Respondents because their summary judgment motion was procedurally deficient. Specifically, Kesler argues that Respondents failed to "state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts," as required by Rule 74.04(c)(1).

Along with their summary judgment motion, Respondents filed a "Statement of Uncontroverted Material Facts" that included nine separately-numbered paragraphs. In paragraphs one through five, Respondents asserted the authenticity of certain records from *Kesler I*, namely, the court's judgment, the trial transcript, Kesler's proposed findings of fact and conclusions of law, his writ petition, and the docket sheet. Respondents attached copies of each of these records to the statement of uncontroverted facts. In paragraphs six through nine, Respondents set forth facts about *Kesler I*, specifically, that Kesler was the relator and that the University, Loftin, and Ryan were the named respondents in that action; that the court held a two-day trial and entered judgment in Respondents' favor; and that Kesler did not appeal *Kesler I*.

Kesler argues that Respondents' statement of uncontroverted facts merely cited documents instead of actual facts contained within those documents. He notes that he "vigorously complained" about this Rule 74.04(c)(1) violation in the circuit court. He asserts that he was prejudiced by this violation because he was forced to "argue against himself and do Respondents' work for them." Kesler further argues that this prejudice was compounded by the judgment, which did not delineate the reasons for the court's decision. He notes that the appellate court in *Kitsmiller Construction Company v. Wynn Construc-*

*tion, Inc.*, 126 S.W.3d 795 (Mo. App. 2004), reversed summary judgment because the motion was similarly deficient.

██ " 'Generally, failure to comply with Rule 74.04(c)(1) warrants a trial court's denial of a summary judgment motion and warrants an appellate court's reversal of the grant of summary judgment.' " *Premier Golf Mo., LLC v. Staley Land Co., LLC*, 282 S.W.3d 866, 872 (Mo. App. 2009) (citation omitted). However, an absolute rule precluding summary judgment for a Rule 74.04(c)(1) violation would not serve the interests of judicial efficiency and economy. *Id.* "Where the 'issues are clear, the material facts are not disputed, and the question posed is one of law,' procedural deficiencies will not preclude addressing a motion for summary judgment on the merits." *Id.* (citation omitted).

In *Chaney v. Cooper*, 954 S.W.2d 510, 515 (Mo. App. 1997), this court ruled that a motion raising the defenses of res judicata and collateral estoppel, which was properly treated as a summary judgment motion, "substantially complied with Rule 74.01(c)(1)" despite the fact that it was presented as a motion to dismiss and, consequently, did not designate uncontroverted material facts. In so holding, the court noted that all of the documents attached to the motion originated from court proceedings; that there was no dispute as to the documents' authenticity or existence; that the motion and the legal memoranda filed by the parties made specific references to the documents; and that the parties' arguments "went to the legal effect of the documents" and not to any factual dispute with regard to the documents. *Id.*

That is precisely the case here. The dispute between Kesler and Respondents is over the legal effect of the documents in *Kesler I*, not their authenticity. The principal fact relied upon by Respondents was the judgment in *Kesler I*. Throughout their suggestions in support of their summary judgment motion, Respondents cited to specific paragraphs in the judgment and quoted from it at length. Kesler provided detailed responses to their arguments. Because Respondents apprised Kesler, the circuit court, and this court of the specific bases on which they claimed to be entitled to summary judgment, their motion substantially complied with Rule 74.04(c)(1). *See id.* Point I is denied.

### Points II–VI—Whether Res Judicata Barred Kesler's Claims against the University, Loftin, and Ryan

██ In Points II through VI, Kesler argues that the circuit court erred in entering summary judgment on the basis that res judicata barred his claims against the University, Loftin, and Ryan. Res judicata, or claim preclusion, prohibits a party from bringing any previously-litigated claim and any claim that, with the exercise of reasonable diligence, should have been brought in that prior suit. *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 715 (Mo. banc 2008). For res judicata to apply, four identities must be present: "1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made." *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991). It is undisputed that the third and fourth identities were met, as Kesler sued the University, Loftin, and Ryan in *Kesler I*.

██ The dispute in this case centers on whether the first two identities were met, the "thing sued for" and the "cause of action." In *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. banc 2002), the Supreme Court defined

these identities as "the 'facts' that form or could form the basis of the previous adjudication." The facts that form the basis of the previous adjudication are the same and, therefore, the identities of the thing sued for and the cause of action are the same, if "the claim arises out of the same 'act, contract or transaction'" as the previous adjudication. *Id.* at 318–19 (citation omitted).

■■■■ In determining what constitutes a "transaction," the court considers "'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Kesterson*, 242 S.W.3d at 715 n.4 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 (2007)). The court must focus on the factual bases for the claims and not the legal theories. *Chesterfield Vill.*, 64 S.W.3d at 319. "'Separate legal theories are not to be considered as separate claims, even if the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.'" *Chadd v. City of Lake Ozark*, 326 S.W.3d 98, 102 (Mo. App. 2010) (quoting *King Gen. Contractors*, 821 S.W.2d at 501). The "'claim extinguished includes all rights of the plaintiff to *remedies* against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Chesterfield Vill.*, 64 S.W.3d at 319 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 (2007)) (footnote omitted). For a subsequent claim on the same transaction to be considered separate, "there must be new ultimate facts, as opposed to evidentiary details, that form a new claim for relief." *Kesterson*, 242 S.W.3d at 716. To constitute "new" ulti-

mate facts, those facts that form the basis of a new claim for relief must be unknown to plaintiff or yet-to-occur at the time of the first action. *Chesterfield Vill.*, 64 S.W.3d at 320.

■■■■ In Point II, Kesler contends res judicata did not bar his unlawful retaliation claims against the University, Loftin, and Ryan in *Kesler II* because those claims involved a separate aggregate of facts from his claims in *Kesler I* and, therefore, a separate transaction. We disagree.

In Kesler's petition for writs of mandamus and prohibition in *Kesler I*, which he filed in September 2014 after he was denied tenure and was given a one-year terminal contract, Kesler alleged that the University, Loftin, and Ryan committed numerous violations of the University's rules and policies in connection with his tenure proceeding, and he requested that the court order a new tenure proceeding. Kesler asserted that he had exceeded the University's employment expectations and would have been entitled to tenure if the alleged rule and policy violations had not occurred. He requested that the court prohibit the University from taking any further action with respect to his pending dismissal from employment. Kesler further alleged that the University and Loftin committed several rule and policy violations in connection with his research misconduct proceedings, and he sought an order directing them to take actions to restore his reputation. In the *Kesler I* judgment, entered on August 20, 2015, the court resolved all of those allegations adversely to Kesler.

In *Kesler II*, Kesler asserted two claims against the University, one claim against Ryan, and one claim against Loftin. In Count I, Kesler alleged that the University wrongfully discharged him in retaliation for reporting instances of alleged fiscal mismanagement, nepotism, self-dealing,

and irregularities committed by Mills-paugh, Jones, and Ryan with regard to their use and appropriation of University and grant funds. Kesler alleged that he observed the mishandling of federal grant funding and violations of the University's employment policies "[d]uring his employment" and reported them to the University between 2009 and 2012. Kesler then formally reported them to the federal government on May 19, 2013, when he filed a qui tam action.[2] Kesler alleged that the acts taken in retaliation for his reporting the misconduct occurred during his tenure review and research misconduct proceedings. In Count II, Kesler asserted that the University breached the covenant of good faith and fair dealing with regard to his tenure review and research misconduct proceedings. This claim was based on purported violations of the University's rules and policies and other wrongdoing in connection with his tenure review and research misconduct proceedings. In his prima facie tort claim against Ryan in Count IV, Kesler alleged that Ryan subjected him to retaliation because he reported, to the University between 2009 and 2012 and to the federal government in 2013, the alleged misuse of federal grant funds and violations of the University's employment policies. Kesler alleged that the retaliation took the form of rule and policy violations and other wrongdoing related to his tenure and research misconduct proceedings. Lastly, in his prima facie tort claim against Loftin in Count V, Kesler alleged that Loftin sought to intentionally injure him by denying his application for tenure and by failing to make any attempt to restore his reputation.

We agree with Respondents that the overlap between *Kesler I* and *Kesler II* is obvious. In *Kesler I*, Kesler sought to prevent his pending termination and to obtain a new tenure review proceeding because of alleged rule and policy violations and other wrongdoing by Respondents in his tenure review and research misconduct proceedings. Even though the court in *Kesler I* rejected those allegations, Kesler sought to impose liability on Respondents based on the same allegations in *Kesler II*. Likewise, in *Kesler I*, Kesler sought an order directing the University and Loftin to take actions to restore his reputation, and in *Kesler II*, he sought damages for their failure to do so.

The only differences between *Kesler I* and *Kesler II* were the legal theories asserted and the relief sought. These differences were insufficient to make the claims in *Kesler II* new for res judicata purposes. *Chesterfield Vill.*, 64 S.W.3d at 319; *Chadd*, 326 S.W.3d at 102. The factual bases for the claims in *Kesler I* and *Kesler II* were the same, as the claims in both cases arose out of the same acts or transactions: Kesler's tenure review and research misconduct proceedings.

Nevertheless, Kesler argues that the factual bases for the claims in both cases were different because he did "not need the factual allegations in *Kesler I* in order to prove his case in *Kesler II*." He notes that "[a]t least 42 factual allegations pled in *Kesler II*"—from the more than 280 paragraphs in his petition—"have absolutely nothing to do with the tenure and research misconduct hearings that were the subject of *Kesler I*." For res judicata to bar his claims in *Kesler II*, it is not necessary that all of his allegations were

---

**2.** A "qui tam" action is "[a]n action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." BLACK'S LAW DICTIONARY 1444 (10th ed. 2014). Kesler filed his qui tam action under the federal False Claims Act.

actually litigated in *Kesler I*, however. It is sufficient that the claims in *Kesler II* consisted of facts that formed or could have formed the basis of the previous adjudication. *Chesterfield Vill.*, 64 S.W.3d at 318. While *Kesler II* may have included additional facts to support Respondents' alleged retaliatory motive, these new allegations did not comprise the retaliation itself, which consisted of the alleged wrongdoing that was litigated in *Kesler I*. Because these new allegations formed part of the facts and circumstances that were litigated in *Kesler I*, Kesler's retaliation claims should have been raised in that case. Point II is denied.

In Point III, Kesler contends res judicata should not be applied to bar his claims because he was factually and legally prevented from bringing his *Kesler II* claims in *Kesler I*. He argues that, at the time *Kesler I* was decided, the claims in *Kesler II* had not yet accrued and certain "ultimate facts" supporting those claims had not yet occurred. Additionally, he argues that he was "legally prevented" from bringing his *Kesler II* claims in *Kesler I*.

Looking first at Kesler's assertion that his *Kesler II* claims had not yet accrued at the time of *Kesler I*, Section 516.100, RSMo 2000, provides that a cause of action accrues when the damage resulting from the wrong, the breach of contract, or the breach of duty "is sustained and is capable of ascertainment." Damage is sustained and capable of ascertainment when the " 'evidence [i]s such to place a reasonably prudent person on notice of a potentially actionable injury.' " *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 583 (Mo. banc 2006) (citation omitted). " '[A]ll possible damages do not have to be known, or even knowable, before the statute accrues.' " *Id.* at 584 (citation omitted). Instead, claims accrue "when a reasonable person would have been put on notice that

an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Id.* "At that point, the damages would be sustained and capable of ascertainment as an objective matter." *Id.* at 584–85 (footnote omitted).

Kesler argues that his *Kesler II* claims did not accrue until his one-year terminal contract expired in September 2015 because, until that time, he was still employed, had lost no compensation, and Loftin could have vacated the terminal contract. We disagree. Kesler was put on notice of a potentially actionable injury by the research misconduct committee's findings of unacceptable behavior and the denial of his tenure in June and July 2014. While all of his alleged damages may not have been known or knowable at that time, Kesler demonstrated that he was on notice that an injury and substantial damages may have occurred in September 2014 when he filed *Kesler I*, in which he claimed that he had been wrongfully denied tenure and suffered damage to his reputation and raised the same allegations of misconduct that formed the factual bases of his claims in *Kesler II.*

This is true of all of the claims in *Kesler II*, including Kesler's wrongful discharge claim against the University and his prima facie tort claim against Ryan. The bases for those claims—Kesler's whistleblower reporting and all of the alleged adverse employment actions purportedly taken in retaliation for this reporting—occurred *before* he filed *Kesler I* in September 2014. Although Kesler asserts that he could not have filed his wrongful discharge claim in *Kesler I* because he was still employed by the University, upon the denial of his tenure in July 2014, he received a one-year terminal contract. Thus, he was on notice at that time that his employment with the University would end in September 2015,

and he reasonably should have known that an injury and substantial damage may have occurred. Furthermore, because Kesler pled his wrongful discharge claim based on breach of contract, this claim would have accrued when the contract was breached. § 516.100. Kesler alleged that the breaches occurred during his tenure review and research misconduct proceedings in 2014—not when his terminal contract expired in 2015. The expiration of Kesler's terminal contract in September 2015 did not cause any of his claims to accrue; it simply made his alleged damages more knowable. *See Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 599–600 (Mo. banc 2013).

Kesler next contends that he could not have filed his *Kesler II* claims in *Kesler I* because certain "ultimate facts" supporting those claims had yet to transpire. Namely, Kesler notes that, after *Kesler I* was decided, deans from nine schools at the University complained to the president of the University and the University about Loftin's leadership; Loftin resigned as chancellor; Kesler discovered additional evidence that Respondents misused federal grant funds; another University professor who had received a one-year terminal contract was retained; and the University's Department of Anthropology voted to offer Kesler an adjunct faculty appointment in that department.

Contrary to Kesler's contention, none of these allegations were essential to the claims in *Kesler II* and did not prevent those claims from accruing. The letter from the University deans about Loftin and Loftin's resignation occurred after Kesler filed his petition in *Kesler II*, so they clearly did not prevent the accrual of those claims. As for Kesler's remaining new allegations, they were all merely evidentiary details that could have supported his *Kesler II* claims but did not constitute new ultimate facts.

Lastly, Kesler asserts in this point that he could not have brought his *Kesler II* claims in *Kesler I* because his petition for writs of prohibition and mandamus had to allege that he had no adequate remedy at law. Kesler could have pled his *Kesler II* claims in the alternative. Rule 55.06(a) allowed Kesler to join "either as independent or as alternate claims, as many claims, legal or equitable, as the party ha[d] against an opposing party." Kesler's claims in *Kesler II* had accrued, and nothing prevented him from bringing them along with his other claims in *Kesler I*. Point III is denied.

In Point IV, Kesler contends res judicata should not apply to his claims against the University because the University's actions in discharging him in retaliation constituted a separate breach of his employment contract that was distinct from any breaches that occurred during his tenure review and research misconduct proceedings.

Res judicata will not bar a plaintiff from bringing successive claims on the same contract when the contract "impos[es] a continuous duty which causes a steady accretion of damage" and the subsequent suit is based on separate and distinct breaches that did not occur until after the previous judgment. *Finley v. Saint John's Mercy Med. Ctr.*, 958 S.W.2d 593, 595–96 (Mo. App. 1998). This principle is not applicable to this case, however, because *Kesler II* did not allege the violation of a continuous contract and did not allege breaches that occurred after *Kesler I* concluded.

Here, the only "continuous" contractual duty to which Kesler refers is his assertion that "contractual terms governed [his] employment with the [U]niversity up until

September 1, 2015." Although Kesler's employment may have been pursuant to his terminal contract, his claims in *Kesler II* did not allege violations of that contract. In Count I, Kesler alleged the University had a contractual duty to him with regard to retaliation for his reporting wrongdoing, and in Count II, he alleged the University had contractual duties to him with regard to his tenure review and research misconduct proceedings. Any contractual duty regarding retaliation for reporting wrongdoing would have been breached when Kesler was subjected to retaliation, and the retaliation Kesler alleged in his petition consisted of rule and policy violations and other wrongdoing that purportedly occurred during his tenure review and research misconduct proceedings. Similarly, any contractual duties regarding his tenure review and research misconduct proceedings ended when those proceedings concluded in July 2014, before he filed *Kesler I*. *Kesler II* did not allege violations of continuing contractual duties that occurred after *Kesler I* concluded. Point IV is denied.

In Point V, Kesler contends that applying res judicata to bar his claims in *Kesler II* would "perpetrate injustice" because he was prevented in *Kesler I* from discovering facts relevant to *Kesler II*. In his related Point VI, Kesler contends the court "expressly" reserved his right to bring a subsequent action on retaliatory actions that Respondents took in response to his reporting of wrongdoing.

Kesler's argument in these points is based on the court's resolution of a discovery dispute in *Kesler I*. In *Kesler I*, Kesler had moved to compel responses to discovery requests for communications from persons named in his qui tam lawsuit alleging fraudulent use of federal grant funds. Kesler had argued that the evidence was relevant to his claim that Respondents had failed to maintain confidentiality about the plagiarism charge brought against him and was directly related to the restoration of his reputation. Respondents objected to the requests on the basis that the documents did not relate to his tenure review or research misconduct proceedings. The court overruled Kesler's motion to compel. Kesler argues that this evidence would have supported his theory that he was being retaliated against for reporting wrongdoing and that it was unjust to deny his ability to discover evidence related to retaliation in *Kesler I* and then to hold in *Kesler II* that he should have brought his retaliation claim in *Kesler I*.

That the court denied Kesler's motion to compel does not mean that the court prevented him from discovering relevant evidence or reserved his right to bring retaliation claims in a subsequent lawsuit.[3] Kesler did not bring retaliation claims in *Kesler I*, so there was nothing for the court to reserve, and the court cannot be faulted for denying discovery into claims that were not raised. Moreover, Kesler did not argue in *Kesler I* that communications about his qui tam lawsuit might show that he was subjected to retaliation for reporting wrongdoing. Instead, he argued that the communications might contain evidence supporting his claim that Respondents failed to maintain confidentiality. The court rejected this argument, but its ruling cannot be construed as an unfair denial of discovery into such claims or as reserving Kesler's right to bring a subsequent suit with retaliation claims, because Kesler's retaliation claims were never presented to the court in *Kesler I*.

---

**3.** The court certainly did not "expressly" reserve Kesler's retaliation claim, as Kesler asserts in this point. Kesler cites no language in the record to support his contention that the court "expressly" reserved a retaliation claim.

Kesler further argues that it would be unjust to society as a whole not to allow his claims in *Kesler II* to proceed. In addition to citing no authority to support this public policy argument, Kesler ignores the public policy underlying the doctrine of res judicata. Res judicata "serves to 'prevent a multiplicity of suits and appeals with respect to a single cause of action, and is designed to protect defendants against fragmented litigation, which is vexatious and costly.'" *Kesterson*, 242 S.W.3d at 716 (citation omitted). Kesler litigated the denial of his tenure and the alleged failure to restore his reputation in *Kesler I*. He lost on the merits, and there is nothing unfair about holding him to that result. Points V and VI are denied.

### Points VII and VIII—Whether Collateral Estoppel Barred Kesler's Claims against Millspaugh and Jones

In Points VII and VIII, Kesler argues that the circuit court erred in entering summary judgment on the basis that collateral estoppel barred his claims for tortious interference with an employment expectancy and prima facie tort against Millspaugh, and his claim of prima facie tort against Jones. Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue that was necessary and unambiguously already decided in a different cause of action. *Brown v. Carnahan*, 370 S.W.3d 637, 658 (Mo. banc 2012); *Gamble v. Browning*, 379 S.W.3d 194, 198 (Mo. App. 2012). Courts consider four factors in determining whether to apply collateral estoppel:

1) the identity of the issues involved in the prior adjudication and the present action, 2) whether the prior judgment was on the merits, 3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and 4) whether the party had a full and fair

opportunity in the prior adjudication to litigate the issue for which collateral estoppel is asserted.

*In re Caranchini*, 956 S.W.2d 910, 912–13 (Mo. banc 1997) (internal quotation marks and citation omitted). When, as in this case, the doctrine is invoked by a party who was not a party to the prior adjudication, courts refer to it as "non-mutual collateral estoppel." *James v. Paul*, 49 S.W.3d 678, 684 (Mo. banc 2001). Non-mutual collateral estoppel may be used offensively or defensively. *Id.* at 685. "Defensive collateral estoppel generally involves a defendant invoking the doctrine to prevent a plaintiff from relitigating a fact decided against the plaintiff in earlier litigation that is necessary for the plaintiff to establish and carry his burden of proof." *Id.*

Here, it is undisputed that the second and third factors were met, as *Kesler I* was a judgment on the merits and Kesler, the party against whom collateral estoppel was asserted, was a party to *Kesler I*. The dispute in this case concerns whether the first and fourth factors were met, that is, whether the issues decided in *Kesler I* were identical with the issues presented in Kesler's claims against Millspaugh and Jones in *Kesler II*, and whether Kesler had a full and fair opportunity to litigate those issues in *Kesler I*.

In Point VII, Kesler contends that *Kesler I* did not necessarily and unambiguously decide issues pertaining to his claim of tortious interference with an employment expectancy against Millspaugh and his claim of prima facie tort against Millspaugh and Jones in *Kesler II*. Specifically, Kesler argues that *Kesler I* did not determine whether he had a valid business expectancy in continued employment at the University, which was vital to his tortious interference claim against Millspaugh, and *Kesler I* did not determine whether Mills-

paugh's and Jones's actions caused his injury, which was vital to both his tortious interference claim against Millspaugh and his prima facie tort claims against Millspaugh and Jones. Because it is dispositive, we will address only Kesler's assertion that *Kesler I* did not preclude relitigation of whether Millspaugh's and Jones's actions caused his injury.

 Causation was a required element of both of Kesler's claims against Millspaugh and Jones. *See Farrow*, 407 S.W.3d at 602; *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 315 (Mo. banc 1993). Proof of causation requires proof of "but for" causation or "causation in fact," which means that the plaintiff must show that, but for the defendant's conduct, the event would not have occurred. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 860–61 (Mo. banc 1993). In a tortious interference claim:

> [T]he plaintiff must show that the defendant's acts induced or caused a breach of the relationship. To determine if the acts caused the breach, the "but for" test is applied. To determine whether the "but for" test is met, a two-step approach is used: 1) did [defendant] actively and affirmatively take steps to induce the breach; and, if so, 2) would the contract[ ] have been performed absent the [defendant's] interference?

*Fabricor, Inc. v. E.I. DuPont de Nemours & Co.*, 24 S.W.3d 82, 93–94 (Mo. App. 2000) (internal quotation marks and citations omitted). Proof of "but for" causation is also an element of Kesler's prima facie tort claim. "For liability to exist, the defendant's conduct must have been the cause in fact of the harm to the plaintiff." RESTATEMENT (SECOND) OF TORTS § 870 cmt. I (1979).[4]

In both of Kesler's claims, proving causation required him to show that he would have been granted tenure but for Millspaugh's and Jones's alleged misconduct. Kesler's tortious interference claim required him to prove that Millspaugh's alleged actions caused the end of his employment with the University. Because Kesler's employment ended after he was denied tenure and received a one-year terminal contract, to establish causation, he needed to prove that, but for Millspaugh's alleged actions, he would have been granted tenure. Likewise, because Kesler's prima facie tort claim rested on his allegation that Millspaugh and Jones conspired to induce the denial of his application for promotion and tenure and his removal from employment with the University, to establish causation, he needed to prove that, but for their alleged actions, he would have been granted tenure.

In denying Kesler's request to exercise its discretionary authority to issue writs of mandamus or prohibition so as to require Respondents to continue to employ Kesler or to afford him further consideration for tenure, the court in *Kesler I* concluded that "[t]he unacceptable behavior identified by the Research Misconduct Committee and the Chancellor was directly relevant to [Kesler's] qualifications in the areas of teach[ing] and research. *That provides ample and sufficient information for the Chancellor's discretionary judgment to deny tenure.*" (Emphasis added.) Because the *Kesler I* court necessarily and unambiguously determined that the research misconduct committee's findings regarding his treatment of a former graduate student and his publishing a sole-authored article without citing or ref-

---

4. The court in *Kiphart v. Community Federal Savings & Loan Association*, 729 S.W.2d 510, 516 (Mo. App. 1987), noted that "[t]he Restatement (Second) of Torts § 870 (1979) supplies the guidelines for the imposition of liability" under the prima facie tort theory.

erencing the student's work supported Loftin's discretionary decision to deny Kesler tenure, Kesler cannot now assert that he would have been granted tenure but for Millspaugh's and Jones's alleged actions.

Moreover, the court in *Kesler I* also made also made extensive findings concerning reasons which did not form the basis of Kesler's denial of tenure, many of which Kesler has attempted to relitigate by asserting them as evidence of Millspaugh's and Jones's allegedly wrongful actions in his tortious interference and prima facie tort claims. Because the court in *Kesler I* found that these alleged actions did not cause the denial of Kesler's tenure, Kesler cannot now claim that, but for those actions, he would have been granted tenure.

Kesler next argues that collateral estoppel cannot be applied to bar him from proving causation because the issues in *Kesler I* were not identical to those in *Kesler II*, in that *Kesler I* did not determine whether Millspaugh's and Jones's alleged actions constituted retaliation. In a related argument, Kesler asserts in Point VIII that he did not have a full and fair opportunity to litigate the retaliation issue in *Kesler I* because he was prevented from discovering such evidence by the court's denial of his motion to compel.

As discussed *supra* in Point V, Kesler did not bring his retaliation claims in *Kesler I* and, furthermore, did not appeal the denial of his motion to compel in that case. Moreover, collateral estoppel does not require the prior litigation of *all* of the issues in *Kesler II*; rather, it requires the prior litigation of only those issues for which collateral estoppel is asserted. *See Caranchini*, 956 S.W.2d at 912–13. Millspaugh and Jones were entitled to summary judgment if collateral estoppel barred Kesler from establishing *any one* of the facts

essential to his recovery in *Kesler II. Roberts*, 391 S.W.3d at 437.

Although motive was an element of Kesler's claims in *Kesler II*, it was just one element. Kesler still had to prove the element of causation. While *Kesler I* may not have directly addressed Millspaugh's and Jones's alleged retaliatory motives, it directly addressed their alleged actions and found that they did not cause the denial of tenure. Kesler had a full and fair opportunity to litigate this issue in *Kesler I. Kesler I*'s findings as to what did and did not cause the denial of Kesler's tenure precluded Kesler from asserting in *Kesler II* that he would have been granted tenure but for Millspaugh's and Jones's alleged actions. Because causation was an essential element of his tortious interference claim against Millspaugh and his prima facie tort claims against Millspaugh and Jones, the court properly granted summary judgment against Kesler on those claims. Points VII and VIII are denied.

### Point IX—Whether Kesler's Prima Facie Tort and Civil Conspiracy Claims Failed as a Matter of Law

In Point IX, Kesler contends the circuit court erred in entering summary judgment against him on his prima facie tort and civil conspiracy claims on the basis that those claims failed as a matter of law. In their suggestions in support of their motion for summary judgment, Respondents alternatively argued that Kesler failed to state a claim for prima facie tort. On appeal, Kesler asserts that he adequately pled his prima facie tort claims and that dismissing those claims prior to discovery was error. Having found that the court properly granted summary judgment on Kesler's prima facie tort claims because they were barred by res judicata and collateral estoppel, we need not decide whether the court could have disposed of them on any other basis.

We do find, however, that Kesler's civil conspiracy claim failed as a matter of law. "In Missouri, if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996). The pleaded basis for Kesler's civil conspiracy claim was his prima facie tort claim. Because res judicata and collateral estoppel barred Kesler's prima facie tort claim, his civil conspiracy claim necessarily failed. Point IX is denied.

## CONCLUSION

We affirm the summary judgment in favor of Respondents on all of Kesler's claims.

All Concur.