CHESTERFIELD VILLAGE,
INC., Appellant,

v.

CITY OF CHESTERFIELD,
Missouri, Respondent.

No. SC 83747.

Supreme Court of Missouri,
En Banc.

Jan. 22, 2002.

Peter H. Herzog, Mike A. Vitale, Tammy S. King, St. Louis, for Appellant.

Douglas R. Beach, Mark D. Mittleman, Robert M. Heggie, St. Louis, for Respondent.

Alan Kohn, St. Louis, James S. Burling, Sacramento, CA, Daniel G. Vogel Paul A. Campo, Leslye M. Winslow, St. Louis, for Amicus Curiae.

MICHAEL A. WOLFF, Judge.

Chesterfield Village, Inc., owner of a 46.3–acre tract in the city of Chesterfield, filed two actions arising from the city's refusal to rezone the property to allow a larger number of residences to be built on the property. Chesterfield Village won its first action, obtaining a circuit court judgment that declared the zoning "illegal .... null and void" and ordered the city to "place a reasonable zoning classification" on the tract. The city rezoned the property to conform to the judgment. Chesterfield Village then filed its second action seeking damages for the city's failure to rezone the property initially. Its claim for damages was that the initial refusal of rezoning constituted a temporary taking and inverse condemnation in violation of the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. section 1983, and article I, sections 26 and 28 of the Missouri Constitution.

The circuit court dismissed the second action for failure to state a claim. After opinion by the court of appeals, this Court granted transfer. *Mo. Const. art. V, sec. 10.* Because the second action arises from the same act or occurrence as the first action, the second is barred by the doctrine of *res judicata* or claim preclusion. The judgment of the circuit court is affirmed.

### Factual and Procedural Background

The city of Chesterfield was incorporated in 1988 and adopted the zoning classifications for the tract that had been used by St. Louis County. At the time of Chesterfield's incorporation, Chesterfield Village, Inc., and Louis and Nancy Sachs owned

the tract. The Sachs in 1997 assigned their interests to Chesterfield Village, sole plaintiff in this action.

In 1994 Chesterfield Village and the Sachs petitioned the city for a change of zoning from the NU ("non-urban") classification to "R 3" residence district classification. The non-urban classification required lots of three acres or more for residential construction, while the R–3 classification permitted lots of 10,000 square feet. The non-urban classification would allow for construction of only 15 single-family residences, and the R–3 designation would permit construction of 114 residences on the 46.3–acre tract.

The Chesterfield City Council in 1995 denied the zoning petition and accompanying request for a "planned environmental unit" that would allow development of the tract for residences in accordance with the R–3 classification.

Chesterfield Village and the Sachs, as owners, sued the city for declaratory and injunctive relief in 1995. The owners contended that the zoning ordinance, as applied to the 46.3–acre tract, was "invalid, illegal, unconstitutional and void because the NU classification as applied to the tract was unreasonable, arbitrary and capricious." The suit was consolidated with another action filed by Chesterfield Village relating to zoning of another similar tract.

After trial to the court, the circuit court held that the non-urban classification was arbitrary, capricious, and unreasonable, and violated the owners' rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Missouri Constitution. The court granted the declaratory and injunctive relief requested by Chesterfield Village and the Sachs. Its judgment requiring "a reasonable zoning classification" for the 46.3–acre tract was entered in April 1996 and was not appealed.

Two months after the judgment, in June 1996, the city of Chesterfield adopted an ordinance that rezoned the tract. It rezoned 8.1 acres to "R–1" residence district classification requiring one-acre lots, 33.1 acres to "R–2" zoning requiring 15,000 square-foot lots, and 5.1 acres to the "R 3" 10,000 square-foot classification. The rezoning allowed for development of 111 single-family homes. The city also adopted an ordinance that established a "planned environmental unit" needed for development of the tract.

Chesterfield Village, which sold the property in 1997, filed its second action in 1999. The second action, the subject of this appeal, seeks damages for temporary taking, inverse condemnation and violation of 42 U.S.C.1983 for significantly impairing the value of the property between 1994, when the owners petitioned the city for rezoning, and 1996, when the city rezoned the property following the circuit court's judgment in the first action. In its second lawsuit, Chesterfield Village pleads that the city essentially complied with the 1996 judgment, stating that the 46.3 acre tract "has been approved for development in a manner substantially similar to that proposed in the owners' initial rezoning petition" and that the owners "thereby obtained virtually the identical result they would have obtained had the property been rezoned as requested in 1994."

 The city made a motion to dismiss or in the alternative for summary judgment. The city's motion raised the contention that the claims were precluded by the doctrine of *res judicata*, as well as arguments directed at standing and the merits of the village's claims. After memoranda of law were filed, the circuit court, without elaboration, sustained the motion to dismiss. Following motion for rehear-

ing by Chesterfield Village, the court entered its amended order and judgment sustaining the motion to dismiss for the reason that Chesterfield Village "failed to state a claim upon which relief could be granted." [1]

### Res Judicata—Claim Preclusion

Chesterfield Village bases its claim for damages on theories of temporary taking and inverse condemnation, whose source of law is the due process clauses of the United States Constitution and the eminent domain provisions of the Missouri Constitution. However, the sole question addressed here is whether the claim for damages asserted by Chesterfield Village, even if it was valid, was merged into the earlier judgment and is thus barred. In view of the disposition of this appeal on the basis of res judicata, we do not reach the question of whether there is a valid claim for damages on these theories.

■ The Latin phrase "res judicata" means "a thing adjudicated." [2] The common-law doctrine of res judicata precludes relitigation of a claim formerly made. King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d 495 (Mo. banc 1991), and Norval v. Whitesell, 605 S.W.2d 789, 790 (Mo. banc 1980).

The key question is what is the "thing"—the claim or cause of action—that has previously been litigated? A claim is "[t]he aggregate of operative facts giving rise to a right enforceable by a court." [3] The definition of a cause of action is nearly the same: "a group of operative facts giving rise to one or more bases for suing." [4] Whether referring to the traditional phrase "cause of action" or the modern terms "claim" and "claim for relief" used in pleading rules such as Rule 55.05, the definition centers on "facts" that form or could form the basis of the previous adjudication.

■ The doctrine of res judicata applies not only to losers, but also to parties that prevailed in an earlier judgment. The doctrine precludes not only those issues on which the court in the former case was required to pronounce judgment, "but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." King General Contractors, Inc., 821 S.W.2d at 501.

■ Res judicata, or its modern term, claim preclusion, prohibits "splitting" a claim or cause of action. Id. Claims that could have been raised by a prevailing party in the first action are merged into, and are thus barred by, the first judgment. [5] To determine whether a claim is

---

1. Although res judicata is an affirmative defense, Rule 55.08, a motion to dismiss for failure to state a claim is appropriate. As this Court said in King General Contractors, Inc., v. Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d 495, 498 (Mo. banc 1991), "defenses of res judicata and issue preclusion are in essence defenses alleging the plaintiff has failed to state a claim upon which relief may be granted." This is so even though matter outside the pleadings is considered by the court taking judicial notice of the earlier judgment. Id. at 499. See Rule 55.27(a). In this case, the judgment in the first Chesterfield Village action is described in

Chesterfield Village's petition and attached as an exhibit in the second action, so the circuit court had the earlier judgment before it and did not need to refer to matters outside the pleadings.

2. Black's Law Dictionary 1312 (7th ed.1999).

3. Id. at 240.

4. Id. at 214.

5. Rule 55.08 refers to "res judicata" and "estoppel" as affirmative defenses. Heins Implement Co. v. Missouri Highway & Transp.

barred by a former judgment, the question is whether the claim arises out of the same "act, contract or transaction." *Grue v. Hensley*, 357 Mo. 592, 210 S.W.2d 7, 10 (1948); *King General Contractors, Inc.*, 821 S.W.2d at 501.

The term "transaction" has a broad meaning: *King General Contractors, Inc.* cites the Restatement (Second) of Judgments, section 24, which says that the "claim extinguished includes all rights of the plaintiff to *remedies* against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." [6] (Emphasis added).

■■■ In its second lawsuit, Chesterfield Village asserts a legal theory based on some of the same sources of law on which it prevailed for injunctive and declaratory relief in the first action. The requested remedy is different. In both the first and second actions, Chesterfield

Village alleges deprivations of constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution. The second suit, seeking damages, calls the theory "temporary taking" and "inverse condemnation," under the due process clauses. The addition of the civil rights statute, 42 U.S.C. section 1983, to the petition in the second case adds nothing to the legal theory under the United States Constitution. Section 1983 is the federal statute that provides a cause of action for violations of the Fourteenth Amendment.[7] The second suit also cites article I, sections 26 and 28 of the Missouri Constitution, which deal with the taking of private property for public use.

■■■ To determine whether Chesterfield Village asserts the same claims in both cases, a court looks to the factual bases for the claims, not the legal theories. *State ex rel. Farmers Ins. Co. v. Murphy*, 518 S.W.2d 655, 660 (Mo. banc 1975).

*Comm'n*, 859 S.W.2d at 684, n. 1 (Mo. banc 1993), observes that *res judicata* is "[s]ometimes also referred to as claim preclusion." Modern scholars advocate the term "claim preclusion" instead of *res judicata*. *See* Allen Vestal, *Rationale of Preclusion*, 9 St. Louis U. L.J. 29 (1964), (quoted in Charles Alan Wright, *The Law of Federal Courts*, section 100A at 722 23 (5th ed.1994) and *Black's Law Dictionary* 1312 (7th ed.1999)). One author explains the terms as follows: "[C]ourts sometimes use an older set of terminology to refer to these concepts. They refer to claim preclusion as *res judicata* and to issue preclusion as *collateral estoppel*. They also use 'res judicata' to refer to the entire topic of former adjudication. The underlying ideas are identical; only the terminology varies." Stephen C. Yeazell, *Civil Procedure* 798 (5th ed.2000). Claim preclusion includes the traditional *res judicata* concepts of "merger" and "bar." *See* Fleming James Jr., Geoffrey C. Hazard, Jr. & John Leubsdorf, *Civil Procedure* section 11.3 and 11.8 (5th ed.2001).

6. Section 24 of the Restatement (Second) of Judgments states in full:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's ·claim pursuant to the rules of merger or bar (see secs. 18,19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

7. *Hague v. Congress of Industrial Orgs.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), overruled on other grounds by *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Claim preclusion "prevents reassertion of the same claim even though additional or different evidence or legal theories might be advanced to support it." James, Hazard & Leubsdorf, *supra* note 5, section 11.8, p. 684.

Both cases seek relief from the city's denial of rezoning in 1994. The operative facts upon which both cases are based are the actions of the city in its 1994 zoning decision. The claim for damages could well have been included in the first action for declaratory and injunctive relief in which constitutional violations are pleaded.

Chesterfield Village, however, claims that it could not have known the full nature and amount of its damages when it filed its first action in 1995 and, thus, should be excused from being required to have sought the damages in the first action. Chesterfield Village also asserts that the trial court in the first action ruled that the city could choose different zoning classifications than those that Chesterfield Village requested. In fact, the city did not rezone the entire tract R–3, as requested, but a combination of R–1, R–2 and R–3 zoning. Moreover, Chesterfield Village contends that it could not have known, at the time of its 1995 pleading, the full extent of its damages until the city of Chesterfield did in fact rezone the property.

Chesterfield Village's contentions raise two related questions: What did Chesterfield Village know when it brought its first action? Are there some ultimate facts, unknown or yet-to-occur at the time of the first action, that form the basis of a new claim for relief?

The two unknown facts cited by Chesterfield Village are: (1) the exact nature of the city's rezoning decision following the first judgment and (2) the amount of total damages for the taking of its property. Neither is sufficient to conclude that there are new ultimate facts, as opposed to evidentiary details, that form a new claim for relief. *King General Contractors, Inc.*, 821 S.W.2d at 501, citing *Abeles v. Wurdack*, 285 S.W.2d 544, 547 (Mo.1956).

As to the Chesterfield rezoning decision, what was known and pleaded in the first action are Chesterfield Village's assertions that the city was depriving the property owners of due process of law by arbitrarily refusing to rezone the property. Chesterfield Village did not plead in the first action that it was entitled to a particular zoning classification. Chesterfield Village in this appeal emphasizes that zoning is a legislative function, and, as a matter of separation of powers, a court cannot rezone or order rezoning to any particular classification. Accordingly, what was pleaded in the first action was that the city's refusal to change the zoning violated the owners' due process rights.

██ Chesterfield Village, by pleading a constitutional violation, knew at the time of the first action that it may have had a claim for damages. Its action was based on the city's refusal in 1994 to rezone the tract. If that was a constitutional violation, as Chesterfield Village claimed in its first action, then the same facts would prove a temporary taking or inverse condemnation, if those are viable theories. And if there was a temporary taking, it was already occurring at the time of the first suit, and damages would have flowed from that point. The fact that Chesterfield Village did not know at that point precisely what its damages would be is of little importance. An injured party, whether injured in body or property rights, can assert a claim for damages even though the party may not know precisely the nature and extent of the injury. *See* Restatement (Second) of Judgments, section 18, illustrations 1–3 (1982).

There was no second claim arising from new facts occurring after the judgment in the first action. Chesterfield Village seeks support from *Elam v. City of St. Ann*, 784 S.W.2d 330 (Mo.App.1990). The *Elam* landowners lost a first suit over a city's failure to rezone, then made a second application and brought a second suit. The court held the second claim was precluded except as to changes in facts relating to the reasonableness of the zoning that occurred since the first judgment. *Id.* at 334. In this case, there are no changes in facts as to the reasonableness of the zoning. Significantly, the city of Chesterfield, after deciding not to appeal the first judgment, passed an ordinance complying with the judgment within about two months of the date the judgment was rendered. The city obeyed the law as embodied in the judgment—it did not commit another constitutional violation that would serve as the basis for a new claim.[8]

**Conclusion**

Any claim for damages that Chesterfield Village attempts to assert in this second action is part of the claim in the previous action against the city of Chesterfield for refusing to rezone the tract. The factual basis for asserting constitutional violations is the same in both actions. A somewhat altered legal theory, or even a new legal theory, does not support a new claim based on the same operative facts as the first claim. Chesterfield Village cannot split its claim. Any claim for damages merged into the first judgment and is precluded.

The judgment of the circuit court is affirmed.

All concur.

**8.** There are situations where damages are ongoing, or not fully ascertained, when an action is being prosecuted, but this does not thereby allow a claim to be split as it was in this case. Assuming, without deciding, that a viable claim for damages existed when the initial claim was brought, a further refusal of the city to zone appropriately, following a judgment, may give rise to a new claim. *Elam*, 784 S.W.2d at 335–36. Another option exists: if damages are ongoing, the trial court may rule on the declaratory and injunctive relief first and order a separate trial on the damages issue. *See* Rule 66.02. Or, a claim that the city failed to comply with a judgment could be treated as an action or proceeding to enforce the original judgment. *See* Restatement (Second) of Judgments section 18 (1982).