TWEHOUS EXCAVATING COMPANY,
INC., Appellant,

v.

L.L. LEWIS INVESTMENTS, L.L.C.,
et al., Respondents.

No. WD 69820.

Missouri Court of Appeals,
Western District.

Aug. 4, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 22, 2009.

Application for Transfer Denied
Nov. 17, 2009.

Paul T. Graham, Esq., Jefferson City, MO, for appellant.

Michael G. Berry, Esq., Jefferson City, MO, for respondent.

Before DIVISION THREE: HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS and LISA WHITE HARDWICK, Judges.

HAROLD L. LOWENSTEIN, Judge.

Twehous Excavating Company, Inc. ("Twehous"), appeals the dismissal of its action seeking a deficiency judgment from defendants L.L. Lewis Investments, L.L.C., Schepker Farm Development, Inc., and Larry L. and Judith M. Lewis (collectively "Lewis"). The issue here is the effect, if any, of a previous mechanic's lien action, which was settled, on a subsequent suit seeking a deficiency following the foreclosure sale of the subject property. The trial court found that the deficiency action was barred either by the doctrine of *res judicata* or the settlement agreement reached in the mechanic's lien suit. The case is reversed and remanded for further proceedings.

## I. FACTUAL BACKGROUND

### A. MECHANIC'S LIEN SUIT

The instant suit was the result of a series of transactions involving Twehous, Lewis, and Jefferson Bank ("the Bank"). Lewis, the respondent, was the principal of a real estate development, Schepker Farm. Lewis obtained two loans from the Bank to purchase two parcels of property. The first loan in 2004, for $1,250,000.00, was secured by a deed of trust on ten acres of property, and the second loan in 2005, for $730,000.00, was secured by a deed of trust on fifty-eight acres of property. Both notes were personally guaranteed by Larry and Judith Lewis.

Lewis contracted with Twehous, the appellant, to excavate, clear, and grade the properties. In July 2006, Twehous filed a $2,120,417.76 mechanic's lien against the Lewis properties. In August 2006, Twehous filed suit against Lewis seeking a judgment for the balance outstanding. The Bank, as the primary lien holder, was joined as a defendant. On October 13, 2006, the trial court entered default judgment against Lewis for $2,212,417.76 plus interest at the rate of 18% per annum. The cause against the Bank was continued for review. In November 2006, the Bank filed a motion to set aside the default judgment.

At that time, Lewis was in default on the notes held by the Bank and secured by the Schepker Farm real estate. In early 2007, the Bank published a notice of trustee's sale of the two Lewis properties. The trial court scheduled a hearing for June 7, 2007, to determine the respective interests of Lewis, Twehous, and the Bank in the properties, postponing the trustee's sale.

The three parties reached a settlement agreement in May 2007, and the trial court

entered judgment in accord with the agreement. Twehous agreed to dismiss, with prejudice, defendants Larry and Judith Lewis, personally, and agreed not to execute on any of Lewis's assets except for the real property at issue. Twehous also agreed, further, to provide Lewis with a satisfaction of judgment of its lien "at such time as it has satisfied as much of the judgment as is reasonably possible from the real estate." Lewis and the Bank agreed to allow judgment to be taken against L.L. Lewis Investments, L.L.C., and Schepker Farm Development, Inc., under the same terms as the October 2006 default judgment and to dismiss their motion to set aside the default judgment.

In the same agreement, Twehous and the Bank agreed to the relative priority of their liens against the Lewis property: the Bank's purchase money loans received first priority, and Twehous's mechanic's liens were accorded second priority. Any monies remaining after the application of the proceeds from the sale of the property to the first two priority liens would be applied to the Bank's separate construction loans.

### B. DEFICIENCY SUIT

Two weeks after the parties entered into the above mechanic's lien settlement agreement, the Bank assigned both Lewis notes to Twehous for a payment of $855,588.76. Twehous then foreclosed on the two properties and, as the only bidder, purchased the properties at the July 31, 2007, trustee's sale for $800,000.00. In November 2007, Twehous brought the present suit against L.L. Lewis Investments, Schepker Farm Development, and Larry and Judith Lewis, as guarantors on the notes, seeking a deficiency judgment of $1,149,742.65.

Lewis's answer raised defenses of impairment of collateral, release, accord and satisfaction, waiver, fraud in the inducement, merger, and satisfaction of judgment. Lewis counterclaimed, seeking, in Count I, to enforce the settlement agreement in which Twehous agreed to limit recovery to the property, and, in the alternative, in Count II to set aside the assignment and foreclosure. Lewis then moved for judgment on the pleadings pursuant to Rule 55.27(b). On June 16, 2008, the trial court granted Lewis's motion "for good cause stated in defendants' suggestions in support of their motion" and found, without explication, that "[Twehous's] claims against all defendants are barred" and Lewis's counterclaims mooted. This appeal by Twehous followed.

### II. STANDARD OF REVIEW

■ Preliminary to any discussion of Twehous's points on appeal, this court must first address the applicable standard of review. Twehous asserts that this court must apply the standard of review applicable for the grant of summary judgment, arguing that the trial court considered the mechanic's lien case in rendering judgment on Lewis's motion for judgment on the pleadings, thereby converting that motion to one for summary judgment. This court disagrees.

■ Rule 55.27(b) provides that "[i]f on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04." "Matters outside the pleadings" may include such documentary evidence as "pretrial discovery, depositions, affidavits and stipulations of the parties," *Lawson v. St. Louis–San Francisco Ry. Co.*, 629 S.W.2d 648, 649 (Mo.App. 1982), or "answers to interrogatories, and admissions on file, together with affidavits filed in support of the motion." *Williams*

*v. Bi–State Dev. Agency,* 858 S.W.2d 867, 868 (Mo.App.1993).

The record is devoid of any evidence that the trial court considered materials outside the pleadings in rendering judgment. Lewis did not attach any documentary evidence, such as affidavits or admissions, to its motion for judgment on the pleadings such that the motion was converted to one for summary judgment pursuant to Rule 74.04. The trial court did not reference any materials outside the pleadings in its "Final Judgment and Order Granting Defendants' Motion for Judgment on the Pleadings" and based its judgment on "good cause stated in defendants' suggestions in support of their motion for judgment on the pleadings."

Moreover, the settlement agreement reached in the mechanic's lien case was properly before the court as Lewis incorporated the agreement into its answer and counterclaim. Thus, even if the trial court considered the agreement in rendering judgment on the pleadings, the settlement agreement was made part of the pleadings.

 The proper standard of review here is that applied to a trial court's grant of a motion for judgment on the pleadings pursuant to Rule 55.27(b). "Judgment on the pleadings is appropriate where the question before the court is strictly one of law." *Eaton v. Mallinckrodt, Inc.,* 224 S.W.3d 596, 599–600 (Mo. banc 2007). "The question presented by a motion for judgment on the pleadings is whether the moving party is entitled to judgment as a matter of law on the face of the pleadings." *RGB2, Inc. v. Chestnut Plaza, Inc.,* 103 S.W.3d 420, 424 (Mo.App.2003). Accordingly, the well-pleaded facts of the petition are treated as true for purposes of the motion and the non-moving party is accorded all reasonable inferences drawn therefrom. *Messner v. Am. Union Ins. Co.,* 119 S.W.3d 642, 644 (Mo.App.2003).

## III. ANALYSIS

Appellant Twehous argues that the trial court erred in finding its deficiency suit was barred. The trial court did not specify the basis for its finding that the action was barred but, rather, referenced "good cause stated in defendants' suggestions in support of their motion." These suggestions offered two legal theories as to why Twehous's action was barred. First, Lewis asserted that, because the Bank did not file a cross-claim against Lewis before settlement, the Bank was barred from asserting any deficiency action by the doctrine of *res judicata,* and Twehous, as subrogated to the Bank, was likewise barred. Second, Lewis argued that the deficiency action was barred by the settlement agreement in which, Lewis asserts, Twehous agreed to only execute on the real estate and did not reserve rights to execute on a different judgment.

 Lewis first asserted that Twehous is barred from bringing the deficiency judgment by the doctrine *res judicata.* Traditionally, *res judicata* bars the same parties from relitigating a claim already determined in a prior adjudication (claim preclusion). *State ex rel. Gott v. Fid. & Deposit Co. of Baltimore, Md.,* 317 Mo. 1078, 298 S.W. 83, 87–88 (1927). *Res judicata,* or claim preclusion, "also precludes a litigant from bringing in a subsequent lawsuit, claims that *should* have been brought in the first suit." *Kesterson v. State Farm Fire & Cas. Co.,* 242 S.W.3d 712 (Mo. banc 2008). The Supreme Court of Missouri has noted that the doctrine of *res judicata* prohibits the splitting of a claim or cause of action that should be brought in a single suit. *Chesterfield Vill., Inc. v. City of Chesterfield,* 64 S.W.3d 315, 318 (Mo. banc 2002). If a party could have brought claims in the first action, those claims are merged into and barred by the first judg-

ment. *Id.* "To determine whether a claim is barred by a former judgment, the question is whether the claim arises out of the same 'act, contract or transaction.'" *Id.* at 318–19. In so determining, "a court must look to the factual bases for the claims, not the legal theories." *Kesterson,* 242 S.W.3d at 716. The question then becomes what did the plaintiff know when the first action was initiated. *Chesterfield Village,* 64 S.W.3d at 320. "Are there some ultimate facts, unknown or yet-to-occur at the time of the first action that form the basis for a new claim of relief?" *Id.*

 Here, clearly, the "unknown or yet-to-occur" facts involve the foreclosure, the sale of the collateral, and the deficiency, if any. As a purely practical matter, the Bank could not have brought a deficiency claim at the time of the mechanic's lien suit because the Bank had yet to foreclose on the property. *Bank of Houston v. Milam,* 839 S.W.2d 705, 707 (Mo. App.1992). ("A deficiency cannot be established until after the sale of the collateral.") If the property had sold for the full amount of the debt, there would be no deficiency and, therefore, no damages. Whether the Bank or its assignee, Twehous, would pursue a deficiency could not be determined at the time of the mechanic's lien suit. A claim for deficiency made *before* the collateral was sold could not be maintained. The deficiency action was not barred by the doctrine of *res judicata.*

 Lewis next argued that Twehous was barred from seeking a deficiency judgment by covenants in the settlement agreement resolving the mechanic's lien suit. Lewis contends that Twehous agreed to limit the execution to the real estate and not pursue Lewis's other assets. The real issue in this suit is whether the scope of the settlement agreement barred Twehous from bringing this separate lawsuit seeking a deficiency judgment.

 The "[i]nterpretation of a settlement agreement is governed by the same principles applicable to any other contractual agreement." *Kansas City v. Colbert,* 978 S.W.2d 421, 423 (Mo.App. 1998). "The primary rule of contract construction is that the intention of the parties shall govern", and, therefore, "[t]he scope of the settlement is determined by the intent of the parties." *Id.* The parties' intent is "ascertained from the language used and from the circumstances surrounding the settlement." *Id.* "Where the language of the settlement agreement is plain and unambiguous on its face, the intent of the parties is to be garnered from the agreement." *Id.* "Any reservation or limitation as to the scope of a settlement agreement must be clearly expressed." *Angoff v. Mersman,* 917 S.W.2d 207, 211 (Mo.App.1996).

Under the agreement reached by all the parties and adopted by the trial court as judgment in the mechanic's lien case, Twehous agreed to dismiss Larry and Judith Lewis, individually, from the suit and to limit recovery to the two parcels of real estate comprising the Schepker Farm development. The Bank did not make any such promises with regard to its rights under the deed of trust. Lewis now asserts that this court should read the agreement to bar any subsequent suit by Twehous that touches upon the property in any way.

This court declines to broaden the scope of the settlement agreement to such an extent. The intent of the parties to the settlement agreement was clearly to resolve the dispute as to the amount of the mechanic's liens and to determine the relative priority of the interests of the two lien holders, the Bank and Twehous. Thus, consistent with that intent, the provisions of the agreement pertaining to Twehous's

rights of recovery only implicate its interest in the property at that time, the mechanic's liens. Twehous did not have any legal interest in the Bank's notes when the agreement was reached. To read the settlement agreement as limiting execution on some unidentified future interest in the real property to the real property itself is outside the intent of the parties.

Upon assignment of the notes, Twehous stood in the Bank's shoes with regard to its interest in the real estate. *See Peet v. Spencer,* 90 Mo. 384, 2 S.W. 434, 435 (1886). The Bank had not waived any right to seek a deficiency judgment in the settlement agreement. Accordingly, Twehous, the assignee, succeeded to the rights of the Bank, the assignor. These rights included foreclosure on the notes, the selling of the real property, and the action seeking a deficiency judgment. Nothing in the settlement agreement barred the deficiency suit.

Twehous, as the assignee of the notes secured by the real property, was not barred from seeking a deficiency judgment by the doctrine of *res judicata* or the settlement agreement. That being said, however, this court notes that it so finds with great reluctance in that the actions of Twehous and, to a lesser extent, the Bank, smack of bad faith and sharp practice. Nevertheless, this court has no choice but to conclude that the suit must go forward. The judgment on the pleadings is reversed and the cause remanded for further proceedings.

All Concur.