

# SUPREME COURT OF MISSOURI
## en banc

SOPHIAN PLAZA ASSOCIATION,    )
et al.,    )
   )
       Respondents,    )
   )
v.    )    No. SC97626
   )
CITY OF KANSAS CITY,    )
MISSOURI,    )
   )
       Appellant.    )

*Opinion issued October 15, 2019*

### APPEAL FROM THE CIRCUIT COURT OF PLATTE COUNTY
**The Honorable James Van Amburg, Judge**

### I.      Introduction

The City of Kansas City appeals a judgment in favor of Sophian Plaza Association and a class of similarly situated plaintiffs on claims of breach of injunction, breach of contract, specific performance and civil contempt in connection with City's termination of its trash rebate program. The breach of contract claim is not viable because the underlying contract was merged into the 1976 Modified Judgment at the request of the parties. Neither Sophian Plaza nor the class of similarly situated plaintiffs may bring a contempt action to enforce the 1976 Modified Judgment because they were not parties to the litigation nor

were the 1976 plaintiffs certified as a class under Rule 52.08. The circuit court's judgment is reversed.

## II. Background

In 1971, City enacted an ordinance, § 16.20(a), providing for trash collection for all residences except "trailer parks or buildings containing seven or more dwelling units." In 1975, three lawsuits filed by owners of residences excluded from the trash collection service were consolidated in one suit challenging the constitutional validity of the ordinance. In its April 1976 judgment, the circuit court held the exclusion of trailer parks and buildings with seven or more dwelling units was unconstitutional and entered a mandatory injunction requiring City to provide trash collection services to Graham[1] "unless and until City enacts a valid ordinance which establishes a reasonable and justifiable classification for those persons who are not entitled to refuse collection by City." Both Graham and City filed timely notices of appeal of the April 1976 order.

On August 31, 1976, City and Graham filed a Stipulation and Agreement ("the Agreement") with the circuit court. The Agreement was signed by Graham's attorney as well as by the assistant city attorney on City's behalf. The Agreement required City to either provide trash services to owners of apartment buildings containing seven or more dwelling units and owners of trailer parks within Kansas City, Missouri, or pay each owner $1.15 per occupied unit per year in lieu of trash services. The Agreement provided the

---

[1] The three separate actions were styled: *Graham, et al., v. City of Kansas City*, No. C-75-515; *Byers & Danneberg, et al., v. City of Kansas City*, No. C-74-172; and *Frances Max, et al., v. City of Kansas City*, No. C-74-173. To promote clarity and avoid confusion, the collective of plaintiffs in these three actions will be referred to as "Graham" in this opinion.

2

cash payment would be increased or decreased each year by "the same percentage as the increase or decrease in the average cost of providing services" to those dwelling units receiving trash service under the city ordinance. The Agreement also provided City's obligations to provide the trash rebate program would terminate only upon City's termination of its entire trash collection service. Following termination of the trash collection service, City's obligation to provide the trash rebate program would renew should City ever then restore its city-wide trash collection service.

Before the record on appeal was filed in the court of appeals, and upon the joint request of the parties through the Agreement, the circuit court entered a modified judgment (the "1976 Modified Judgment") declaring § 16.20(a) unconstitutional, adopting and incorporating the Agreement into its judgment at the request of the parties, and entering a mandatory injunction directing City to comply with the terms and conditions of the Agreement.[2] In 1976, City amended its trash collection ordinances in adherence with the 1976 Modified Judgment by formally adopting the trash rebate program into the city code.

---

[2] Though more than 30 days had passed after the circuit court's entry of judgment in 1976, Rule 75.01 was effectively identical to the rule today:

> After the filing of notice of appeal and before the filing of the record on appeal in the appellate court, *the trial court, after the expiration of such thirty-day period, may still vacate, amend or modify its judgment upon stipulation of the parties accompanied by a withdrawal of the appeal.*

(Emphasis added). The circuit court was within its power to modify its judgment despite both parties having filed timely notices of appeal because the record on appeal was not filed in the appellate court, the parties stipulated to the modification, and the parties filed a withdrawal of their appeals.

City continued providing the trash rebate program until the city council approved a proposed budget eliminating the program in 2008. In 2010, City effectively eliminated the program by repealing City Code §§ 62-41(a3) and 62-42.

The class plaintiffs, Sophian Plaza Association, Townsend Place Condominium Association, Inc., and Stadium View Apartments filed a class action petition in 2015, alleging City's elimination of the trash rebate program was a breach of the modified judgment and a breach of the Agreement. The circuit court certified a class consisting of:

> All managers and owners of trailer parks, condominiums, apartments and buildings containing seven or more dwelling units located in Kansas City Missouri during the class period May 1, 2010 to the present. Excluded from the class are members of the Heartland Apartment Association as of February 27, 2015.

After trial, the circuit court entered judgment in favor of the class on its claims for breach of injunction, breach of contract, specific performance, and civil contempt.[3] The circuit court assessed $10,274,704 in compensatory damages, required City to "pay $2,846 per day until it complies with its trash collection obligations[,]" and ordered City to pay class counsel $1,362,562.50 in fees and $59,035.56 in expenses. The court of appeals affirmed the judgment, and this Court granted transfer.[4]

---

[3] "Breach of Injunction" is not a claim separate from civil contempt. *See Contract Enforcement: Specific Performance and Injunctions*, § 1.2.2. (2d ed. 2019) ("A promisor who refuses to comply with … an injunction may be subject to civil or criminal contempt.").

[4] Mo. Const. art. V, § 10.

### III.    Analysis

The circuit court determined members of the class fell within the definition of "Owners" provided in the Agreement.[5]  In accord with this determination, the circuit court concluded City breached the Agreement and the class could recover for breach of contract and could receive specific performance of the Agreement.  A fatal flaw in the circuit court's conclusion in this regard is that, at the request of Graham and City, the circuit court merged the Agreement into the 1976 Modified Judgment.  "[M]erger is the substitution of rights and duties under the judgment or the decree for those under the agreement[.]"  46 Am. Jur. 2d *Judgments* § 430 (2017).

The law of merger by judgment is one closely related to *res judicata*.  *See*, *e.g.*, *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 n.5 (Mo. banc 2002). The most common method by which it operates is "[w]hen a claim on a contract is reduced to judgment[.]"  46 Am. Jur. 2d *Judgments* § 438 (2017).  This Court has recognized the law of merger by judgment in this context.  *See Ballard v. Standard Printing Co.*, 202 S.W.2d 780, 782 (Mo. 1947) ("Generally a cause of action merges in the judgment entered thereon and any further action must be upon the judgment."); *State ex rel. Noe v. Cox*, 19 S.W.2d 695, 699 (Mo. 1929) ("[A] valid judgment upon a promissory note merges the cause of action which previously existed upon the note, and, after a valid judgment has been rendered upon the note, recovery must be had upon such judgment and not upon the

---

[5] The Agreement defines "Owners" as:
    [T]he owners or authorized managing agents of the owners of apartment buildings containing seven or more dwelling units and the owners or authorized managing agents of trailer parks located within the City of Kansas City, Missouri.

note."). However, merger by judgment may also occur at the election of the parties to the contract, so long as the parties intend the agreement to become decretal through its requested merger with the judgment. *School Dist. of Kansas City, Mo. v. Mo. Bd. of Fund Comm'rs*, 384 S.W.3d 238, 261 n.21 (Mo. App. 2012).[6]

---

[6] In *School*, the court of appeals outlined the law of merger by judgment in this particular context:

> Generally, where the object of the contract does not, by its nature, require court approval to render the terms of the contract enforceable, court "approval" of the contract does not merge the contract with the decree and the contract remains independently enforceable. Even in such circumstances, **the parties can elect to have the otherwise enforceable contract incorporated into a decree** (as distinguished from simply being approved by the court), in which case the contract does merge with the decree, **and is thereafter only subject to enforcement or modification by the court**. … [*W*]hether the agreement is to remain contractual or to become decretal depends on the intention of the parties*.

384 S.W. 3d at 261 n.21 (emphasis added) (internal citations omitted); *see also Toth v. Toth*, 483 S.W.2d 417, 422 (Mo. App. 1972); *Jenks v. Jenks*, 385 S.W.2d 370, 375 (Mo. App. 1964).

The law of merger exists to prevent suits like Sophian Plaza's. Once parties turn to the courts to enforce their previously-entered agreement—be it through a judgment on a breach of contract claim, or, as here, a voluntary merger with a binding judicial decree in order to obtain the right to bring a contempt action upon the Agreement's breach—a party cannot later seek to separately and independently enforce the contract while retaining a right to enforce the court's judgment through civil contempt proceedings.

> When a claim on a contract is reduced to judgment, the contract between the parties is voluntarily surrendered and canceled by merger in the judgment and ceases to exist. Because all of the prior contractual rights are merged into and extinguished by the judgment, thereafter … the contract no longer serves any purpose except as evidence supporting the judgment.

46 Am. Jur. 2d *Judgments* § 438 (2017).

This is not a new or novel legal doctrine—its roots trace to the Court of Common Pleas in 1606. It was by noted English barrister and Judge Sir Edward Coke's pen that the law of merger was first woven into the common law fabric. Maynard E. Pirsig, *Merger by Judgment*, 28 Minn. L. Rev. 419, 424-25 (1944). In *Higgens's Case*, Coke reasoned:

> So when a man has a debt on a bond, and by ordinary course of law has judgment thereon, the contract by specialty which is of an inferior nature, is by judgment of law changed into a matter of record, which is of a higher nature. If he who recovers may have a new action and a new judgment he may have infinite actions, and infinite judgments to the perpetual vexation and charge of the defendant & *infinitum in jure reprobatur* [infinity in law is condemned].

6 Co. Rep. 44 b. (1606).

6

The parties' intention for the Agreement to become decretal by operation of merger is clear from the Agreement's plain language. In paragraph seven, the Agreement reads: "The parties jointly request the Court to incorporate this Stipulation and Agreement in a judgment herein ***and to make compliance with the provisions hereof mandatory***." (Emphasis added). The language of the resulting 1976 Modified Judgment equally evinces the parties' intent for the Agreement to become decretal.[7]

When Graham and City jointly requested the 1976 circuit court to merge the Agreement "in a judgment herein and to make compliance with the provisions hereof mandatory[,]" and the circuit court complied with the request, they voluntarily surrendered their future right to make a separate claim on the Agreement itself. Instead, the rights established in the Agreement can only be enforced through a contempt proceeding brought pursuant to the 1976 Modified Judgment.

---

[7] In relevant part, the 1976 Modified Judgment provides:
> [T]he parties hereto have filed herein their Stipulation and Agreement, a copy of which is appended hereto and ***made a part hereof***, proposing that a system of cash payments or refuse services for the properties of plaintiffs and others similarly situated, and for dwelling units in trailer parks, mutually agreeable to the parties, ***be adopted by the Court and incorporated into a modification of its judgment herein***. … [A] Mandatory Injunction is hereby entered directing the City of Kansas City to provide refuse collection services, or the cash equivalent thereof, to the properties of the plaintiffs and to the properties of others similarly situated, and to dwelling units located in trailer parks, ***under the terms and conditions specified in the Stipulation and Agreement filed herein***."

(Emphasis added).

The circuit court concluded that since May 1, 2010, "City has failed to meet its obligation under the Modified Judgment and Mandatory Injunction[,]" and accordingly held City in civil contempt of the Modified Judgment and Mandatory Injunction and entered judgment for the class. However, no members of the class were parties to the 1976 Modified Judgment.

"Civil contempt is for the protection of *a party to the litigation*, the party for whose benefit the order, judgment or decree was entered. Its function is to provide a coercive means to compel the other party to the litigation to comply with *relief granted to his adversary*." *Teefey v. Teefey*, 533 S.W.2d 563, 566 (Mo. banc 1976) (emphasis added). It necessarily follows, then, that to bring a civil contempt action, one must have been a party for whose benefit the original judgment was entered. No one in this class falls into that category.

The class argues that, despite no formal class certification in the 1976 proceedings, the 1976 Modified Judgment was clearly intended to "afford relief to all owners of relevant properties" and "treated all such owners as members of a class for whom the Modified Judgment provided a specific pecuniary benefit." (Emphasis omitted). Therefore, the class argues, it should be entitled to enforce the 1976 Modified Judgment because its members qualify as "others similarly situated" under the judgment's terms. *Supra*, n.7. However, that argument ignores that the requirements imposed by Rule 52.08 "are not merely technical or directory, but mandatory." *Beatty v. Metro. St. Louis City Sewer Dist.*, 914 S.W.2d 791, 795 (Mo. banc 1995), *overruled on other grounds by Zweig v. Metro.*

*St. Louis Sewer Dist.*, 412 S.W. 3d 223, 248 n.17 (Mo. banc 2013). The reason, *Beatty* provides, is:

> The impact of certification of a lawsuit as a class action is readily apparent. Individuals who did not initiate the litigation and who will have little or no practical control over the litigation nonetheless **will be bound by its result.** The potential increase in exposure to the defendant and the additional increase in the burden and cost of litigation to all parties may well overwhelm the substantive merits of the dispute.

*Id*. at 794-95 (emphasis added). The consequence of not certifying a class under Rule 52.08(b) and thereafter following class action procedures—including ordering individual notice be provided to all class members under Rule 52.08(c)—is that the 1976 Modified Judgment can be enforced only by the parties to that judgment, even though the judgment extends benefits to others. *State ex rel. Niess v. Junkins*, 572 S.W.2d 468, 470 (Mo. banc 1978) (concluding a lawsuit was maintainable only by the individual parties on their own behalf, and not as a class action, due to a failure to strictly adhere to Rule 52.08's requirements).

## IV.    Conclusion

Accordingly, this class cannot avail itself of enforcement proceedings brought upon the 1976 Modified Judgment. The circuit court's judgment holding City in civil contempt of the 1976 Modified Judgment—to which no one in the class was a party—is reversed.

_____
Zel M. Fischer, Judge

All concur

9