

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| JOSEPH WILLIAM MONTANARI, | ) | |
| | ) | |
| Appellant, | ) | WD86755 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| KATHLEEN CLAIR MCKAY-<br>MONTANARI, | ) | October 1, 2024 |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable R. Travis Willingham, Judge**

**Before Division Two: W. Douglas Thomson, Presiding Judge,**
**Karen King Mitchell, Judge, and Janet Sutton, Judge**

Joseph William Montanari (Joseph)[1] appeals the judgment of the Circuit Court of Jackson County (trial court) which issued a dismissal order finding that his petition for damages was barred by the doctrine of *res judicata*. Joseph raises two points on appeal. Joseph argues (1) the trial court erroneously applied *res judicata* because the petition for damages was distinct from a previous motion for satisfaction of judgment and contempt (motion for contempt) filed in a separate division of the Jackson County Circuit Court (dissolution court) and (2) the trial court

---

[1] Because parties share a surname, we refer to them by their first names for purposes of clarity. No familiarity or disrespect is intended.

lacked authority to apply *res judicata*, *sua sponte*. We affirm the dismissal order but remand for a determination of attorney fees on appeal.

## Factual and Procedural Background

On March 6, 2019, Kathleen McKay-Montanari (Kathleen) filed a petition for dissolution of marriage against Joseph in the dissolution court. A judgment and final decree of dissolution of marriage (dissolution judgment) was entered on December 18, 2020, by consent. Pursuant to the dissolution judgment, Joseph was to pay Kathleen an equalization payment of $404,000.[2] Joseph paid Kathleen $40,000 on September 9, 2020, and then paid the remaining amount of $364,000 on December 3, 2020.

According to Joseph, Kathleen was ordered to file a satisfaction of judgment within one week of when the equalization payment was paid in full. Under Rule 74.11(a),[3] Kathleen was required to "immediately" file an acknowledgement of satisfaction. Kathleen did not file the satisfaction of judgment until July 16, 2021.

On July 19, 2021, Joseph filed the motion for contempt in the dissolution court requesting that the court hold Kathleen in contempt for her failure and refusal to file a satisfaction of judgment. After a show cause hearing, an order was entered on March 18, 2022,[4] denying the motion for contempt and finding Kathleen's failure to timely file her satisfaction of judgment

---

[2]  The parties neglected to include the dissolution judgment in the legal file for our review. Any discussion of the findings in the dissolution judgment is taken from the parties' recitation of the facts.

[3]  All rule references are to Missouri Supreme Court Rules (2020), unless otherwise noted.

[4]  The judgment denying motion for civil contempt/show cause order is dated February 24, 2022, but it was filed on March 18, 2022, as indicated by the file stamp of the latter date.

was "not the result of her intentional and contumacious conduct." Joseph did not appeal the judgment denying his motion for contempt.

Over one year later, on May 31, 2023, Joseph filed a petition for damages that was assigned to the trial court. Joseph claimed that he was forced to borrow funds at a high interest rate to finance the equalization payment and that he was attempting to refinance this loan. Joseph alleged that due to Kathleen's delay in filing the satisfaction of judgment, he was required to pay $625 to update a lender-required appraisal that expired on July 15, 2021. Additionally, Joseph alleged he was required to pay a higher interest rate, accruing a per diem difference in interest of $93.62 for a total of $5,605.24 from June 25, 2020, to August 31, 2020, when the replacement financing closed.

The parties appeared before the trial court on August 30, 2023. The court questioned Joseph's counsel as to why the matter raised in the petition was not the same subject of the motion for contempt previously filed and disposed of by the dissolution court. In response, Kathleen "indicated that the subject matter had already been raised in the dissolution case" and she provided the court a copy of the March 18, 2022, judgment denying Joseph's motion for contempt filed in the dissolution court.

On October 19, 2023, the court issued a dismissal order[5] in which it, *sua sponte*, found that the petition for damages was barred by the doctrine of *res judicata*. The court dismissed the matter with prejudice.

---

[5] The dismissal order disposed of all issues and, thus, was a final judgment. *See Mo. Bond Co., LLC v. Devore*, 580 S.W.3d 653, 656 (Mo. App. E.D. 2019); *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 599 (Mo. banc 2019). Furthermore, the action was dismissed with prejudice, thus, constituting an adjudication on the merits barring the assertion of the same claim against the same party. *See Doe v. Visionaire Corp.*, 13 S.W.3d 674, 676 n.3 (Mo. App. E.D. 2000). *See also* Rules 67.01 and 67.03.

Joseph appeals.

## Standard of Review

"Because a determination of *res judicata* necessarily depends upon proof of the prior judgment, we review the motion to dismiss under the same standards as a motion for summary judgment." *Spath v. Norris*, 281 S.W.3d 346, 349 (Mo. App. W.D. 2009) (citing *WEA Crestwood Plaza, LLC v. Flamers Charburgers, Inc.*, 24 S.W.3d 1, 5 (Mo. App. E.D. 2000)). As such, our review of the trial court's judgment is subject to *de novo* review. *Spath*, 281 S.W.3d at 350.

## Legal Analysis

Joseph raises two points on appeal which we will discuss in turn. First, Joseph argues the dissolution court's judgment denying the motion for contempt does not bar the petition for damages in that they are separate and distinct causes of action, and, thus, *res judicata* does not apply to bar his claims. Second, he claims the trial court erred by *sua sponte* raising the *res judicata* defense on Kathleen's behalf.

## Point I

As previously stated, Joseph first argues the trial court erred in issuing the order of dismissal because the motion for contempt claims were separate and distinct from those in the petition for damages. More specifically, Joseph argues the claims are not identical because the application of civil contempt does not allow for the enforcement of civil remedies and his petition for damages sought civil remedies.

*Res judicata*, or "claim preclusion," precludes relitigation of a claim previously made. *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. banc 2002). To determine whether a claim is barred by a former judgment, we look at whether the claim arises out of the same "act, contract or transaction." *Id.* at 318-19 (citations omitted). *Res judicata*

applies when there is concurrence of the following elements: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made." *Spath*, 281 S.W.3d at 350 (citation omitted). Additionally, the original action must have resulted in a judgment on the merits. *Johnson Controls, Inc. v. Trimmer*, 466 S.W.3d 585, 591 (Mo. App. W.D. 2015). When conducting this inquiry, a "court looks to the factual bases for the claims, not the legal theories." *Chesterfield*, 64 S.W.3d at 319 (citation omitted).

Here, the original action resulted in a judgment on the merits. Both parties appeared before the dissolution court, evidence was heard, and the court denied the motion for contempt. *See Johnson Controls, Inc.*, 466 S.W.3d at 591.

We now turn to the four elements to determine if *res judicata* was properly applied in this case. The first element concerns whether there is concurrence in the identity of the thing sued for. In both the motion for contempt and the petition for damages, Joseph sought damages he allegedly sustained when Kathleen failed to timely file a satisfaction of judgment. As part of his prayer for relief in the motion for contempt, Joseph argued he "should recover and be awarded judgment against [Kathleen] or [Kathleen] ordered to pay him an equivalent fine for his damages calculated based on a per diem rate of $93.62 from and after the [sic] June 25, 2020[,] until the new loan is closed after satisfaction of judgment has been entered." Similarly, in the petition for damages, Joseph requested $5,605.24, with interest at the statutory rate, based on the "per diem difference in interest of $93.62" allegedly accruing since June 25, 2020. Therefore, element one is satisfied.

The second element concerns whether the causes of action are identical. Both the motion for contempt and the petition for damages derive from the initial dissolution judgment

5

entered on December 18, 2020. Additionally, both the motion for contempt and the petition for damages rest on the allegation that due to Kathleen's failure to timely file a satisfaction of judgment in the dissolution case, Joseph incurred damages when trying to refinance his loan. Therefore, the claims arise out of the same act and have the same factual basis. *See Chesterfield*, 64 S.W.3d at 318-19.

Pointing to *Smith v. White*, 67 S.W.3d 742 (Mo. App. W.D. 2002), Joseph attempts to differentiate the motion for contempt—from the petition for damages—by incorrectly arguing that a civil contempt action does not allow for the enforcement of civil remedies. He also argues that *res judicata* does not apply because the judgment denying his motion for civil contempt made no mention of damages. In actuality, Joseph alternatively requested Kathleen be ordered to pay the "per diem rate of $93.62 from and after the [sic] June 25, 2020," in the motion for contempt. He specifically asked for civil penalties that he now argues on appeal are not permitted in a motion for contempt. Joseph also requested he be awarded reasonable attorney's fees and costs in prosecuting the motion. The dissolution court denied the motion for contempt and denied awarding costs and attorney's fees, finding that Kathleen's failure to timely file the satisfaction of judgment was not due to "intentional and contumacious conduct." We find the dissolution court's failure to explicitly mention damages immaterial to the application of *res judicata* when it clearly denied the motion for contempt in its entirety.

Additionally, we disagree with Joseph's interpretation of *Smith*. *Smith* does not state that a civil contempt proceeding does not allow for the enforcement of civil remedies. Instead, *Smith* explains per diem fines are the "most typical" sanction due to the remedial nature of civil contempt proceedings. *See id.* at 746-47 (citations omitted) ("A money sanction imposed to enforce a civil contempt adjudication, rather, is per diem, continues only as long as the

6

disobedience continues and properly bears some relation to damages occasioned by the default in performance."). Additionally, even if Joseph used a slightly altered legal theory to pursue damages, *res judicata* would still apply because the new claim (i.e., the petition for damages) derives from the "same operative facts as the first claim." *Chesterfield*, 64 S.W.3d at 321. Element two is satisfied.

The third element concerns whether there is concurrence in the identities of the parties. The litigants in this current appeal are identical to the parties in the dissolution judgment, the motion for contempt, and the petition for damages. Therefore, the third element is satisfied.

The last element of *res judicata,* quality or status of the person, is satisfied when the "defendants were identical and sued in the same capacity in both suits." *Commonwealth Land Title Ins. Co. v. Miceli*, 480 S.W.3d 354, 365 (Mo. App. E.D. 2015). Kathleen was named in her individual capacity in the first and second action and, thus, maintained the same status. *See id.* The fourth element is satisfied.

Based on the discussion above, we find that all four elements are satisfied and *res judicata* applies to bar Joseph's petition for damages.

Point one is denied.

## Point II

We now turn to Joseph's second point on appeal. Joseph argues the trial court erred in entering its order of dismissal, *sua sponte*, because the trial court lacked authority to raise the affirmative defense of *res judicata* when Kathleen did not plead the defense in writing as required by section 517.031.[6]

---

[6] All statutory citations are to the Revised Statutes of Missouri (2016) as currently updated, unless otherwise noted.

*Res judicata* is an affirmative defense and, thus, the seeking party will ordinarily plead it in an answer, raise it in an amendment to the pleadings, or assert it by motion to dismiss. *Patrick V. Koepke Const., Inc. v. Woodsage Const. Co.*, 119 S.W.3d 551, 555 (Mo. App. E.D. 2003). However, *res judicata* "is a defense that not only benefits the defending party, but also benefits the court's ability to efficiently administer justice." *Id.* Therefore, the United States Supreme Court explains:

> [I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte, even though the defense has not been raised.* This result is fully consistent with the policies underlying *res judicata*: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.

*Arizona v. California*, 530 U.S. 392, 412 (2000) (quoting *United States v. Sioux Nation of Indians,* 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)) (emphasis added).

The eastern district of this court has recognized two circumstances where *res judicata* may be raised *sua sponte*: "when the defense arises out of the court's own earlier judgment, or when the 'demands of comity, continuity in the law, and essential justice' confront the court and all relevant records are before it." *Koepke Const.*, 119 S.W.3d at 554-56 (citation omitted) (rejecting appellant's claim it was denied due process when the circuit court *sua sponte* denied its motion for a creditor's bill under *res judicata* without giving notice or opportunity to be heard).

As the trial court noted, "courts may take judicial notice of their own records in other prior proceedings." *State ex rel. Callahan v. Collins*, 978 S.W.2d 471, 474 (Mo. App. W.D. 1998) (citing *State v. Gilmore*, 681 S.W.2d 934, 940 (Mo. banc 1984)). The trial court had notice of an earlier judgment issued by another of its divisions: the dissolution court. It had access to and took judicial notice of the case files. *See Koepke Const.*, 119 S.W.3d at 555-56. It then

8

properly conducted the *res judicata* analysis and accordingly issued its order of dismissal. Furthermore, the trial court's *sua sponte* analysis falls squarely within the recognized circumstances allowing it to do so. *See id*. at 555.

Point two is denied.

**Attorney's Fees**

Last, we address Kathleen's request that she be awarded her attorney's fees on appeal because the appeal is frivolous and has been pursued in a way to deny her statutory right to fees. Kathleen does not argue a contractual or statutory basis for the award of attorney's fees. Rather, she cites Rule 84.19 (2024), as the basis for her request.

Under Rule 84.19, "[i]f an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper." The test generally used to determine whether an appeal is frivolous is "whether the appeal presents any justiciable question and whether it is so readily recognizable as devoid of merit on the face of the record that there is little prospect of success." *Biersmith v. Curry Ass'n Mgmt., Inc.*, 359 S.W.3d 84, 89-90 (Mo. App. W.D. 2011).

Kathleen argues Joseph failed to raise any justiciable questions because Point I only relies on *Smith v. White*, which Joseph erroneously interpreted and applied, and Point II lacks any citations to relevant authority in support of his argument. Additionally, Kathleen asserts that by filing and appealing a second action, Joseph deprived her of her statutory right to seek attorney's fees under section 452.355, that would apply had this action been filed and litigated as part of the dissolution case. Under section 452.355, a trial court may award attorney's fees arising out of a dissolution proceeding which includes "sums for legal services rendered and costs incurred . . .

9

after entry of a final judgment." *See Meierer v. Meierer*, 876 S.W.2d 36, 37 (Mo. App. W.D. 1994) (affirming award of attorney's fees for services rendered on appeal).

Awarding damages for a frivolous appeal under Rule 84.19 is a "drastic measure which the court reserves for those cases in which an appeal on its face is totally devoid of merit." *Brown v. Brown*, 645 S.W.3d 75, 84 (Mo. App. W.D. 2022) (quoting *Capital One Bank v. Hardin*, 178 S.W.3d 565, 577-78 (Mo. App. W.D. 2005)). We determine whether an appeal is frivolous on a case-by-case basis, generally considering "whether the appeal presents any justiciable question and whether it is so readily recognizable as devoid of merit on the face of the record that there is little prospect of success." *Brown*, 645 S.W.3d at 84 (quoting *Vanschoiack v. Adkins*, 854 S.W.2d 432, 435 (Mo. App. W.D. 1993)).

After reviewing the briefing, we find that the present appeal is an appropriate subject for Rule 84.19 sanctions. While appellate courts have the authority to award attorney fees on appeal, the trial court is better equipped to hear evidence and determine the reasonableness of the requested fee. *Goins v. Goins*, 406 S.W.3d 886, 890 n.1 (Mo. banc 2013). Therefore, we remand to the trial court to determine the reasonable attorney's fees to be awarded to Kathleen.

### Conclusion

The order of dismissal is affirmed and the case is remanded for the trial court to determine the appropriate attorney's fees on appeal to be awarded.

_____
Janet Sutton, Judge

W. Douglas Thomson, P.J., and Karen King Mitchell, J. concur.

10